No. 82-61

IN THE SUPREME COURT OF THE STATE OF MONTANA

1983

GENE WIGHT,

Claimant and Appellant,

vs.

HUGHES LIVESTOCK COMPANY, INC.,

Employer,

and

MOUNTAIN WEST FARM BUREAU MUTUAL
INSURANCE COMPANY,

Defendant and Respondent.

Appeal from:   Workers' Compensation Court
               Honorable Tim Reardon, Judge presiding.

Counsel of Record:

    For Appellant:

        R. V. Bottomly argued, Great Falls, Montana

    For Respondent:

        Robert L. Johnson argued, Lewistown, Montana

    For Amicus Curiae:

        Milodragovich, Dale and Dye, Missoula, Montana
        Harold Dye argued, Missoula, Montana
        Robert Kelleher, Billings, Montana

    For Guardian Ad Litem:

        D. Patrick McKittrick argued, Great Falls, Montana

                              Submitted:  February 24, 1983

                              Decided:  May 16, 1983

Filed:   MAY 16 1983

*Ethel M. Harrison*
                                        Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

This appeal presents the issue of the weight to be given by the Workers' Compensation judge to contingent fee contracts between successful claimants and their attorneys, where the Workers' Compensation judge fixes attorneys fees under section 39-71-611, MCA, and related statutes.

The underlying cause was before us on appeal in Wight v. Hughes Livestock Company, Inc. et al. (1981), ___ Mont. ___, 634 P.2d 1189, 38 St.Rep. 1632. We upheld the right of Wight to recover compensation benefits, deleted a 20 percent statutory penalty that the Workers' Compensation Court had levied, and remanded the cause to the Workers' Compensation judge for the purpose of fixing attorneys fees to be awarded to Wight.

In May 1979, Wight had entered into a contingent fee agreement with his attorney which provided that Wight would pay 25 percent of all monies obtained on his claim by way of settlement and/or judgment. After the successful appeal to this Court, Wight and his attorney entered into a second contingent fee agreement whereby Wight agreed to pay 40 percent of any compensation received.

On November 11, 1981, the claimant filed an amended petition before the Workers' Compensation Court to fix attorneys fees at $35,916.74, that figure representing 40 percent of Wight's readjusted lifetime benefits.

Farm Bureau objected to the petition respecting attorneys fees, contending that the petition did not contain information as to the amount of time that was spent by claimant's attorney in prosecuting his client's cause, and

that the attorneys fees in any event should be based on past-due benefits as opposed to lifetime benefits.

Claimant responded by recomputing his attorneys fees to claim $33,022.49 and noted that both of his contingent fee agreements had been filed with the Workers' Compensation Division pursuant to section 39-71-613(2), MCA, and that the agreements which were in accordance with the Division's rules had been approved by the Division.

On December 14, 1981, the Workers' Compensation judge issued an order directing the claimant to file further information regarding attorneys fees and costs, specifically requesting a "detailed statement specifying the number of hours compiled in pursuing the above entitled matter and the exact amount of costs incurred." Claimant's attorney responded stating, "counsel is engaged in 100 percent of legal work and litigation on a contingent fee basis and keeps no records concerning hours on any case and has no way to reconstruct on a fair and reasonable basis the hours involved in this extended litigation." Claimant's attorney further responded that he was relying on his 40 percent contingency fee agreement as a fair and reasonable arrangement, and requested the court to set a hearing if the court felt the evidence was insufficient to determine the fee.

On December 24, 1981, the Workers' Compensation judge entered an order awarding attorneys fees, part of which reads:

> "Claimant's counsel is entitled to attorney fees in the amount of $8,500.00. This amount is based on two factors: the amount of effort required in taking this case to trial and defending it on appeal; and the fact that claimant's counsel is in a difficult position to collect from his client under the contingent fee contract. Claimant's counsel argues that this court is obligated to award attorney fees based on his contingent fee

contract and on conclusion of law no. 4, which states:  'The court will fix and establish reasonable attorney fees and costs based in part upon the contract between the claimant and his attorney.'  This conclusion does not state that this Court will award the entire contingent fee as an attorney fee, but that the fee will be based in part on the contingent fee contract.  The $8,500.00 amount is awarded with the contingent fee in mind.

". . .

"The usual method employed by this court in determining a reasonable fee is to review the number of hours spent in a case as submitted by claimant's counsel.. . .  [T]his court ordered claimant's counsel to submit a statement specifying his hours spent on the case and the amount of costs incurred.  Claimant's counsel respectfully declined to submit hours stating that all of his legal business is done on a contingent fee basis and that he does not keep time records.  If that is the case, claimant's counsel must rely on the discretion of this court to award him a reasonable fee."

On January 12, 1982, claimant filed for a rehearing on attorneys fees which was by the Workers' Compensation Court denied.  Thereafter this appeal was taken on the issue of attorneys fees.

In spite of the reduced amount of attorneys fees awarded, the Workers' Compensation Court nevertheless found the contingent fee agreement to be reasonable, but that the brunt of the attorneys fees should be borne by the claimant. The Workers' Compensation Court said:

"The court would like to add that the reasonableness of the contingent fee agreement is not disputed.  The question before the court was what is a reasonable fee to be assessed against the insurer.  The insurer is not a party to the contingent fee agreement and is not bound by its terms.  In addition, when an attorney fee is awarded by the court, that award is not intended to render invalid the contingent fee agreement.  The court does expect that an attorney fee award will be applied to reduce any contingent fee liability the claimant may have incurred by reason of his contingent fee agreement.  The holding in Holton v. Stoltze Land and Lumber Company, 38 St.Rep. 1835, does not require this court to assess against the insurer the entire contingent fee liability."

Thus the appeal from the Workers' Compensation order fixing attorneys fees in this case places before us two important issues: (1) whether a successful claimant for Workers' Compensation benefits should be required under the statutes to pay any part of his incurred attorneys fees, and (2) how does a claimant's contingent fee contract with his attorney affect the discretion of the Workers' Compensation judge in fixing attorneys fees to be awarded to the claimant?

The Net Award Concept

Three statutes bear on the right of a successful claimant to recover attorneys fees against the insurer or employer. They are as follows:

Section 39-71-611, MCA:

"In the event an insurer denies liability for a claim for compensation or terminates compensation benefits and the claim is later adjudged compensable by the workers' compensation judge or on appeal, the insurer shall pay reasonable costs and attorneys' fees as established by the workers' compensation judge."

Section 39-71-612, MCA:

"(1) If an employer or insurer pays or tenders payment of compensation under chapter 71 or 72 of this title, but controversy relates to the amount of compensation due and the settlement or award is greater than the amount paid or tendered by the employer or insurer, a reasonable attorney's fee as established by the division or the workers' compensation judge if the case has gone to a hearing, based solely upon the difference between the amount settled for or awarded and the amount tendered or paid, may be awarded in addition to the amount of compensation.

"(2) When an attorney's fee is awarded against an employer or insurer under this section there may be further assessed against the employer or insurer reasonable costs, fees, and mileage for necessary witnesses attending a hearing on the claimant's behalf. Both the necessity for the witness and the reasonableness of the fees must be approved by the division or the workers' compensation judge."

Section 39-71-613, MCA:

"(1) When an attorney represents or acts on behalf of a claimant or any other party on any workers' compensation claim, the attorney shall submit to the division a contract of employment stating specifically the terms of the fee arrangement between the attorney and the claimant.

"(2) The administrator of the division may regulate the amount of the attorney's fee in any workers' compensation case. In regulating the amount of the fee, the administrator shall consider the time the attorney was required to spend on the case, the complexity of the case, and any other relevant matter the administrator may consider appropriate.

"(3) If an attorney violates a provision of this section, a rule adopted under this section, or an order fixing attorney's fee under this section, he shall forfeit the right to any fee which he may have collected or been entitled to collect."

It will be seen from the foregoing statutes, that section 39-71-611, MCA, applies where the insurer denies completely the Workers' Compensation benefits. Section 39-71-612, MCA, applies where there has been a partial payment or partial tender of compensation to the claimant. Section 39-71-613, MCA, gives the Division of Workers' Compensation the power to require the submission to it of attorneys' employment contracts; the administrative division is given the power to regulate the amount of the attorneys fees "in any Workers' Compensation case." Section 39-71-611, MCA, gives the Workers' Compensation judge the exclusive power to fix attorneys fees; section 39-71-612, gives the Division or the Workers' Compensation judge the power to set fees.

The "net recovery" concept was first discussed by this Court in Myers v. 4-B's Restaurant, Inc. (1977), 172 Mont. 159, 561 P.2d 1331. At issue in Myers was whether the insurer was liable for attorneys fees where the insurer had not denied compensability but claimed that the workers'

- 6 -

disability was permanent partial, rather than permanent total. This Court stated:

> "[A]s the purpose of the statute is to grant claimant a net recovery of compensation benefits . . . a partial denial of benefits . . . later adjudged payable is within [the statute.] If the statute were otherwise construed . . . its purpose and objective of affording a net recovery would be defeated." (Emphasis added.) 172 Mont. at 161, 561 P.2d at 1333.

Then came the case of Smith v. Pierce Packing (1978), 177 Mont. 267, 581 P.2d 834, where we quoted at length from, and approved of the net recovery language in Myers. Last came Holton v. F. H. Stoltze Land and Lumber Company (1981), ___ Mont. ___, 637 P.2d 10, 38 St.Rep. 1835. In Holton, the Workers' Compensation judge awarded a claimant $9,000 and then directed the claimant to pay $1,000 of his award to his attorney. This Court said:

> "While the Workers' Compensation judge may determine which attorney fees are reasonable, the clear meaning of the statute is to provide attorney fees above and beyond the compensation awarded to a successful claimant. Assessing a successful claimant $1,000 for attorney fees clearly reduces his net compensation and thus cannot be allowed." 637 P.2d at 14, 38 St.Rep. at 1840.

We are aware that the net award concept is within the spirit and history of the Workers' Compensation Act. Montana was in the vanguard of the states to adopt acts providing Workers' Compensation. In Ch. 67, Laws of Montana (1909), the legislature provided for a state accident insurance and workman's compensation plan for personal injury sustained by coal mine employees in the course of their employment. The act was to be administered by the state auditor. The concept of coal mine workers' compensation was attacked in Cunningham v. Northwestern Improvement Company (1911), 44 Mont. 180, 119 P. 554. There this Court held that a Workers' Compensation law was within the police power of the state, was not class

- 7 -

legislation because it extended only to coal miners, was within the taxing power of the state, was properly adopted for a public purpose, did not abuse the trial by jury right of the Seventh Amendment of the United States Constitution, provided due process of law, but was repugnant to the equal protection clause of the United States Constitution because the act did not prevent separate suits by employees against their coal mine employers.

The essential framework for the present Workers' Compensation Act was adopted by the legislature in Ch. 96, Laws of Montana (1915). This act was attacked on behalf of Lewis and Clark County, upon the ground that the act should not apply to it since the county's premiums would have to be raised by taxes which the county contended was not a public purpose (Lewis and Clark County v. Industrial Accident Board (1916), 52 Mont. 6, 155 P. 268). What this Court said in 1916 about the development of Workers' Compensation Acts is worth remembering:

> "Workingmen's Insurance and Compensation Laws are the products of the development of the social and economic idea that the industry which has always borne the burden of depreciation and destruction of the necessary machinery, shall also bear the burden of repairing the efficiency of the human machines without which the industry itself could not exist. The economic loss from vocational disease, industrial accident, invalidity, old age and unemployment was a subject of serious inquiry among the constituent German states before the days of the empire, but the credit for crystallizing the sentiment into workable laws will always remain with Bismarck. From the enactment of the sick insurance statute in Germany in 1883, and the fundamental law in 1884, the idea of compensation based only upon the risks of the business and the impairment of earning efficiency spread to other European states, and finally penetrated to this country. The federal government, thirty-one states, Alaska, Hawaii and the canal zone now have measures for the relief of injured workmen patterned after the German insurance or English compensation plan.. . . Compensation laws proceed upon the theory that the injured workingman is

entitled to pecuniary relief from the distress caused by his injury, as a matter of right, unless his own willful act is the proximate cause, and that it is wholly immaterial whether the injury can be traced to the negligence of the master, the negligence of the injured employee or a fellow-servant, or whether it results from an act of God, the public enemy, an unavoidable accident, or a mere hazard of the business which may or may not be subject to more exact classification; that his compensation shall be certain, limited by the impairment of his earning capacity, proportioned to his wages, and not dependent upon the skill or eloquence of counsel or the whim or caprice of a jury; that as between workmen of the same class who suffer like injuries, each shall receive the same compensation, and that, too, without the economic waste incident to protracted litigation and without reference to the fact that the injury to the one may have been occasioned by the negligence of the master, and to the other by reason of his own fault." (Emphasis added.)

In later cases, this Court piously intoned (while turning down the claimants) that the theory of workman's compensation law is to lift the burden of industrial accidents from the injured workman and their dependents and place it on industry. Betor v. National Biscuit Company (1929), 85 Mont. 481, 280 P. 641; Kerns v. Anaconda Copper Mining Company (1930), 87 Mont. 546, 289 P. 563.

It should be beyond cavil therefore that the fundamental basis of worker's compensation laws is to accommodate the public interest in placing economic loss caused by employment accidents not upon the public, but upon the industry in which the accident occurred, Williams v. Industrial Accident Board (1939), 109 Mont. 235, 97 P.2d 1115; and that the principal aim of workers' compensation coverage is to provide social insurance which protects the injured workman against disability from a work-connected injury, again placing the cost of the injury on the industry employing him. Mahlum v. Broeder (1966), 147 Mont. 386, 412 P.2d 572.

If therefore, the social purpose of Workers' Compensation Acts is to provide for the injured worker a fund which replaces his lost earnings or his lost earning capacity, the reasonable cost of effectuating such social purpose where litigation is necessary ought also be the burden of the industry. Any erosion of the workers' right of recovery by imposing upon the worker the cost of procuring his rights erodes to that extent the social purpose.

It is clear to us that it is the objective of the statutes allowing attorneys fees in compensation cases to preserve intact the eventual award recovered by the claimant for his impairment, by assessing in addition his attorneys fees and costs against the insurer or employer. It is a further purpose of the statutes to allow the Workers' Compensation Court or Division to regulate attorneys fees for successful claimants. Section 39-71-613, MCA, supra. The statutory requirement that Workers' Compensation laws be liberally construed exists for the protection of the worker. Section 39-71-104, MCA. The concern of the legislature, the spirit of the Workers' Compensation law are one and the same: that the cost of repairing a worker's injuries or replacing his lost earning capacity shall be the burden of industry, and not that of the injured worker. It is from that viewpoint that the Workers' Compensation Court or Division should determine the reasonableness of attorneys fees and exercise discretion in regulating the same.

Effect of Approved Contingent Fee Contracts

We turn now to the more difficult issue, the weight that should be accorded by the Division or the Workers' Compensation judge to a contingent fee contract which has

been entered into between the successful claimant and his attorney.

Where the subject of a contingent fee contract offends public policy, Montana will not enforce the contract. Keller v. Turner (1969), 153 Mont. 59, 453 P.2d 781. Otherwise, as between attorney and client, Montana will enforce a contingent fee contract according to its written terms. Gross v. Holzworth (1968), 151 Mont. 179, 440 P.2d 765.

This Court is quite aware that a small segment of the Bar is available to a worker seeking an attorney to prosecute a Workers' Compensation claim. Most of the members of the bar do not engage in Workers' Compensation practice, not because those claims are undesirable, but in the sense of being outside their expertise. Workers' Compensation claims are a specialized practice, requiring training and experience if the claims are to be successfully negotiated. Rare is the worker who can afford an attorney on the basis of an hourly fee, pay as you go. More important, a claims attorney will often find it necessary to advance on behalf of the client the costs incident to prosecuting the claim, the fees for consultations with doctors, the costs of depositions, the preparation of exhibits, and the necessity of travel. The "risk factor" that an attorney faces in entering into a contingent fee contract with a Workers' Compensation claimant includes not only the loss of the value of his services, but of the costs which he may have advanced. For that reason, it has been observed:

> "The experience of the marketplace indicates that lawyers generally will not provide legal representation on a contingent basis unless they receive a premium for taking that risk. Ordinarily, when lawyers undertake a representation on a contingency basis, they bargain for a percentage of the recovery. That percentage is

- 11 -

sufficiently high to compensate the lawyer not only for the reasonable value of the time he or she anticipates devoting to the particular lawsuit, but also for the time devoted to other lawsuits undertaken on the same basis but unsuccessful in result. Thus, in a rough and arbitrary way, the contingent percentage fee accounts for the risk of nonrecovery." Berger, Court Awarded Attorneys' Fees: What is Reasonable? 126 Univ. Pa. Law Review 281, 324-325 (1977); Clark v. Sage (1981), 102 Idaho 261, 629 P.2d 656, 661.

In McKittrick v. Gardner (4th Cir. 1967), 378 F.2d 872, 875, the Court said in a case involving a contingent fee in a social security benefits claim:

"While the judge must approve the reasonableness of the fee in every case and may not unquestioningly endorse contingent fee contracts providing for a fee of not more than 25 percent of the accrued benefits, there is no prohibition against his consideration of the contingency of compensation. Availability of lawyers to such claimants is of the highest importance, and if a lawyer is to receive no compensation unless there is an award, his compensation is contingent on whether or not he has a contract that says so. Most of the disability claimants have no other resources for the payment of fees. The contingency of compensation, whether it stems from an employment contract or results from the claimants indigency, is highly relevant in the appraisal of the reasonableness of any claim. The effective lawyer will not win all of his cases, and any determination of the reasonableness of his fees in those cases in which his client prevails must take account of the lawyer's risk of receiving nothing for his services. Charges on the basis of a minimal hourly rate are surely inappropriate for a lawyer who has performed creditably when payment of any fee is so uncertain."

We have previously noted that section 39-71-613, MCA, granted power to the administrator of the Division of Workers' Compensation to regulate attorneys fees "in any Workers' Compensation case." Since the statute does not speak directly of contingent fees, the administrator of the Division after hearings adopted an administrative rule, section 24.29.3801, A.R.M., which provides as follows:

"24.29.3801. Attorney Fee Regulation. (1) An attorney representing a claimant on a worker's compensation claim shall submit to the division, in accordance with Section 39-71-613, MCA, a contract

- 12 -

or a copy of a contract of employment stating specifically the terms of the fee arrangement. The contract of employment shall be signed by the claimant and the attorney.

"(2)  An attorney representing a claimant on a workers' compensation claim, and who plans to utilize a contingent fee system to establish the fee arrangement with the claimant may not charge a fee above the following amounts:

"(a)  For cases that have not gone to a hearing before the Workers' Compensation judge, twenty-five percent (25%) of the amount of compensation payments the claimant receives due to the efforts of the attorney;

"(b)  For cases that go to a hearing before the Workers' Compensation judge, thirty-three percent (33%) of the amount of compensation payments the claimant receives from an Order of the Workers' Compensation judge;

"(c)  For cases that are appealed to the Montana Supreme Court, forty percent (40%) of the amount of compensation payments the claimant receives based on the order of the Supreme Court.

"(3)  The amount of medical and hospital benefits received by the claimant shall not be considered in calculating the fee, unless the workers' compensation insurer has denied all liability, including medical and hospital benefits, in the claimant's case, or unless the insurer has denied the payment of certain medical and hospital costs and the attorney has been successful in obtaining such benefits for the claimant.

"(4)  For good cause shown, the division may allow contingent fees in excess of the maximum fees as set forth in the above schedule. Such a variation from the maximum contingent fee schedule must be approved by the division before a final fee contract is entered into between the attorney and the claimant.

"(5)  The fee schedule set forth above does not preclude the use of other attorney fee arrangements, such as the use of a fee system based on time. When such a fee arrangement is utilized, the contract of employment shall specifically set forth the fee arrangement, such as the amount charged per hour.

"(6)  The contingent fee schedule set forth above is a maximum schedule, and nothing prevents an attorney from charging a contingent fee below the maximum contingent fee schedule. The division encourages attorneys to review each workers' compensation claim on a case by case basis in order to determine an appropriate fee. An attorney may

also reduce the attorney's fee from what was originally established in the fee contract, without the approval of the division.

"(7) The division retains its authority to regulate the attorney fee amount in any workers' compensation case even though the contract of employment fully complies with the rules set forth above."

As a matter of legislative history, section 39-71-611, MCA, supra, originally provided that "the insurer shall pay reasonable costs and attorneys fees as established by the division." By an amendment Ch. 63, § 2, Laws of 1979, the word "division" was struck from the statute and the term "Workers' Compensation judge" inserted. Thus the administrative rule above cited was adopted by the Division when it had the power to regulate not only fees on cases which had not gone to adjudication, but also fees on those cases which were adjudicated by the Workers' Compensation Court.

When we turn our attention to the administrative rule promulgated by the Division, it becomes self-evident that the contingent fees included therein by the Division were considered by it to be reasonable. No other weight can be attached to the adoption of the administrative rule but that the Division had determined that the amount of such contingent fees fully protected the claimant, were consonant with the practice of attorneys in the Workers' Compensation field, and fulfilled the Division's legislative obligation to provide for reasonable attorneys fees to successful claimants.

Our sister state, Idaho, subscribes to the "net award" theory in fixing attorneys fees. Clark v. Sage (1981), 102 Idaho 261, 629 P.2d 657, 659. Idaho had earlier held that when its industrial accident board had approved a contingent

fee agreement, the successful claimant was entitled to an award of attorneys fees against the insurer or employer in accordance with the contingent fee agreement. Mayo v. Safeway Stores, Inc. (1969), 93 Idaho 161, 457 P.2d 400.

In Clark v. Sage, supra, the case came before the Idaho Supreme Court because the industrial accident commission had withdrawn its approval of a contingent fee contract. The question before the Idaho court was what effect should be given to the contingent fee contract. The Idaho Court stated:

> "Nevertheless, the proposition still remains that where an employer and its surety have unreasonably refused to pay an otherwise compensable claim, an award of attorney fees from them 'should not be less than the amount that would be found reasonable if agreed upon between the claimant and his attorney as a fee to be paid by claimant.' 3 Larson on Workers' Compensation Laws, § 83.40 at 15-649 (1976) (relying on Mayo v. Safeway Stores, Inc., supra). Given that the claimant and his former attorney entered into a contingent fee agreement, the commission is under a duty to determine what would be a reasonable attorney fee on a contingency basis. This obligation necessarily arises from the fact that the intent of the claimant and his former attorney was for the attorney to be paid on a contingent fee basis. (Emphasis added.)" 629 P.2d at 660.

The Idaho court further held that in determining a reasonable attorneys fee its commission must engage in a balancing process and consider on contingent basis the following factors:

> "(1)    The anticipated time and labor required to perform the legal service properly.
>
> "(2)    The novelty and difficulty of legal issues involved in the matter.
>
> "(3)    The fees customarily charged for similar legal services.
>
> "(4)    The possible total recovery if successful.
>
> "(5)    The time limitations imposed by the client or circumstances of the case.

"(6)  The nature and length of the attorney-client relationship.

"(7)  The experience, skill and reputation of the attorney.

"(8)  The ability of the client to pay for the legal services rendered.

"(9)  The risk of no recovery."  629 P.2d at 661.

Not mentioned by the Idaho court in Clark v. Sage, supra, but surely a factor to be considered, is the market value of the lawyer's services at the time and place involved.  Indeed it may be said that in every retainer contract, be it personal or public, hourly, fixed fee or contingent fee, each such contract is in reality based on the market value of the lawyer's services.  With the added factor of the market value of the lawyer's services at the time and place involved, we adopt the factors set out by the Idaho Supreme Court to be considered by Montana's Workers' Compensation judge or the Division in determining the reasonableness of contingent fee contracts and the amount of attorneys fees to be awarded to successful claimants.

It is clear to us in the instant case that the Workers' Compensation judge, in fixing a fee of $8,500 for Wight's attorney did not consider the proper factors in determining the reasonableness of the fee to be awarded.

We therefore, remand this case for a hearing based on the factors which we have here approved to determine the reasonable attorneys fees that Wight is entitled to recover.

In considering Wight's contingent fee contract with his attorney, the Workers' Compensation judge should accept the approved contract as having a strong presumption in its favor.  If the judge does not set a fee in accordance with the contingent fee contract, he shall state with

- 16 -

particularity his reasons in writing, based upon strong countervailing evidence, why the contingent fee contract is not followed by him, and precisely what weight he accorded to the contingent fee contract.

We would direct, however, that the Workers' Compensation Court give no effect to the 40 percent contingent fee contract adopted between the claimant and his attorney after the successful appeal had taken place in this case. When the attorney entered into the first contract with his prospective client for a 25 percent contingent fee contract, no confidential relationship existed between the attorney and the worker at that time, and a 25 percent contingent fee contract stands on the same footing as any other contract between persons competent to contract. Renegar v. Staples (Okla. 1963), 388 P.2d 867. After the confidential relationship was established by the execution of the 25 percent contingent fee contract the attorney was bound not to use the influence which his position gave him to obtain an advantage over his client. See section 72-20-202, MCA. We do, however, accept the attorney's explanation that the second contract came about when he realized that he was charging less than other attorneys for the same kind of services, and therefore requested of his client a new contract in line with the rules promulgated by the Division. The attorney at oral argument felt that the second contract clouded the real issues in this case and indeed it has so operated.

We are troubled that one effect of this decision is that it may require the Workers' Compensation judge to hold evidentiary hearings on all contested attorneys fees. Since the court's time now is so severely limited and its workload

so great, this additional burden would undoubtedly adversely affect the rights of other claimants to a speedy determination of their claims. To avoid such an effect, we suggest that the Workers' Compensation Division promulgate an addition to section 24.29.3801, A.R.M., providing a system whereby an attorneys fee contract submitted to the Division for approval under section 39-71-613, MCA, shall at the same time be served by copy upon the employer or insurer, and a procedure be set out for the insurer or employer to contest before the Division the reasonableness of the provisions in the contract for an attorneys fee. The Division, in approving or disapproving such contract should be guided by the same factors herein set forth in determining a reasonable attorneys fee. When the Worker's Compensation Judge is required to fix attorneys fees under our statutes, a fee contract approved by the Division should have the same presumption in its favor and the Judge should apply the same factors and procedure for contested fee cases before him as here set out.

In the rare case where an evidentiary hearing is necessary, the Worker's Compensation judge shall extend opportunity for hearing, and to that extent we overrule the holding in Continental Insurance Co. & Raymond Corcoran Trucking v. Horton (1980), ____ Mont. ___, 613 P.2d 1011, 37 St.Rep. 1244. Needless, frivolous or picayunish requests for evidentiary hearings before the Workers Compensation judge shall be regarded by this court as an abuse of procedure warranting penalty or discipline.

Reversed and remanded to the Workers' Compensation Court pursuant to the instructions herein. Costs to claimant.

_____
                    Justice

We Concur:

_____
            Chief Justice

_____

_____

_____

_____

_____
              Justices

- 19 -

Mr. Justice Frank B. Morrison, Jr. dissenting:

I dissent in part.

In my opinion the result reached by the majority is correct except for rejection of the 40 percent contingent fee contract adopted between claimant and his attorney. This contract was approved by the Division and under the rationale of the opinion should be transferred to the insurance company unless there is strong evidence rejecting that contract as being unreasonable. There was a confidential relationship existing between attorney and client but there is no indication that the attorney abused that relationship. In fact the majority opinion recognizes that the contingent fee contract was adjusted because it was lower than the contracts normally approved for the same or similar representation.

Under the rationale that we adopt in this case, the 40 percent contingent fee contract, once approved by the Division, should be accepted by the Worker's Compensation Court as reasonable absent the requisite countervailing evidence. Here there is none. Therefore, the 40 percent contingent fee should be paid by the insurance carrier.

Justice Frank B. Morrison, Jr.

Mr. Justice John Conway Harrison concurring in part and dissenting in part.

I concur in the majority's decision to remand this case to the Workers' Compensation Court. However, my views are not in complete accordance with the majority.

For the most part, I agree with the majority's view of the net recovery concept, however, I would have expanded somewhat. The majority frames the question of net recovery as follows: "whether a successful claimant for Workers' Compensation benefits should be required under the statutes to pay any part of his incurred attorneys fees." The majority thoroughly discussed the net recovery concept as well as the ultimate purpose of Workers' Compensation legislation to reach the conclusion that: "[i]t is clear to us that it is the objective of the statutes allowing attorneys fees in compensation cases to preserve intact the eventual award recovered by the claimant for his impairment, by assessing in addition his attorneys fees and costs against the insurer and employer." I completely agree, however, I would respectfully add the following comments.

Any award of attorneys fees under section 39-71-611, MCA, is a complete award. The claimant's attorney cannot seek further compensation from his client based on any contractual arrangement. The statute empowers the Workers' Compensation judge to award "reasonable costs and attorneys' fees;" thus anything claimed beyond the amount set by the court must be deemed unreasonable; even though (as in this case) any excess had previously been approved by the Workers' Compensation Division. There cannot exist two standards of reasonableness; one arising out of an attorney/client contract approved by the Division, and one applied by the Compensation Court.

My view of the net recovery concept is a shade different from the majority's view. In theory, we fully agree; net recovery means that a claimant's benefits should not be reduced by attorneys fees and costs. Our difference must be in how a net reco-

very comes about and this involves the discretion of the Workers' Compensation judge.

The majority addresses this issue by asking: "how does a claimant's contingent fee contract with his attorney affect the discretion of the Workers' Compensation judge in fixing attorneys fees to be awarded to the claimant?" In answering this question, the majority states:

> "[i]n considering Wight's contingent fee contract with his attorney, the Workers' Compensation judge should accept the approved contract as having a strong presumption in its favor. If the judge does not set a fee in accordance with the contingent fee contract, he shall state with particularity his reasons in writing, based upon strong countervailing evidence, why the contingent fee contract is not followed by him, and precisely that weight he accorded to the contingent fee contract."

The majority very narrowly defines the discretion of the Workers' Compensation judge. I believe a broader interpretation is correct. There exists an important reason for allowing broad discretion. In these situations, before negotiation of an attorney/client fee contract, the attorney and claimant may realize that if they are successful, the insurer will be liable for payment of the fee. Thus, there is an incentive to set the fee as high as possible. A similar situation has occurred in eminent domain cases. In one such case this Court stated:

> "Here, since the state or political sub-division must pay the attorney fees, there is even a stronger reason to remand the instant case for consideration of the factors set out in Crncevich and Tholkes. Under the 1889 Constitution fees in condemnation cases were percentage contingency fees. In the private agreements the parties protected their own interests but where the fee is to be paid by the state there is no incentive for the land-owner to bargain to keep the percentage reasonable." Rauser v. Toston Irr. Dist. (1977), 172 Mont. 530, 546, 565 P.2d 632, 641.

In workers' compensation cases, fee agreements must first be approved by the Division; thus, one could argue that the idea expressed in Rauser is not applicable. However, in my view, the Division's rule is not comprehensive enough to insure that in particular cases the fee approved will be reasonable. An

excellent example is the case before us. The second contract was approved, it should not have been. In other words, a particular agreement may conform to the division's rule, yet in some circumstances, may be unreasonable. Consequently, the Workers' Compensation judge must have broad discretion in making an award.

Furthermore, I do not believe it is correct to require the judge to base his award on a particular method. However, if a claimant and his attorney have entered into a contingent fee agreement, I clearly recognize such a fact deserves special consideration. Not inappropriate at this juncture are the remarks of Clement F. Haynsworth, Jr., Chief Judge of the Fourth Circuit, in McKittrick v. Gardner (1967), 378 F.2d 872, 875, in a case involving a contingent fee in a social security benefits claim:

"While the judge must approve the reasonableness of the fee in every case and may not unquestioningly endorse contingent fee contracts providing for a fee of not more than twenty-five percent of the accrued benefits, there is no prohibition against his consideration of the contingency of compensation. Availability of lawyers to such claimants is of the highest importance, and if a lawyer is to receive no compensation unless there is an award, his compensation is contingent whether or not he has a contract that says so. Most of the disability claimants have no other resources for the payment of fees. The contingency of compensation, whether it stems from an employment contract or results from the claimant's indigency, is highly relevant in the appraisal of the reasonableness of any fee claim. The effective lawyer will not win all of his cases, and any determination of the reasonableness of his fees in those cases in which his client prevails must take account of the lawyer's risk of receiving nothing for his services. Charges on the basis of a minimal hourly rate are surely inappropriate for a lawyer who has performed creditably when payment of any fee is so uncertain."

Finally, I disagree on the issue of whether or not a hearing is required. The majority suggests that evidentiary hearings on attorney fees will be rare. This means they are not required. I realize that we recently stated: "the matter of allowing a hearing concerning attorney fees is . . . discretionary." Continental Ins. Co. v. Horton (1980), ____ Mont. ____, ____, 613 P.2d 1011, 1013, 37 St.Rep. 1244, 1246. However, I would

overrule Horton and hold that an evidentiary hearing on attorneys fees is required in these situations. I would apply the general rule; "[a]n award of attorney fees, like any other award must be based on competent evidence." Crncevich v. Georgetown Rec. Corp. (1975), 168 Mont. 113, 120, 541 P.2d 56, 59.

I am fully aware of the heavy workload with which the Workers' Compensation Court is faced. However, I feel that due process requires an evidentiary hearing on attorney's fees in section 611 situations. The insurer should have notice and opportunity to be heard to contest requests for awards. Also, the claimant should be able to justify larger awards because of extraordinary circumstances.

John Conway Harrison
Justice

Mr. Chief Justice Frank I. Haswell, concurring in part and dissenting in part:

I concur in the result reached by the majority in this case. I likewise agree that the award to claimant should be a net recovery with all attorney fees to be paid by the insurer and that the factors to be considered in awarding attorney fees are those set forth in Clark v. Sage et al. (1981), 102 Idaho 261, 629 P.2d 657.

My quarrel is with the holding of the majority that the adoption of a maximum contingent fee schedule by the Workers' Compensation Division constitutes a determination by the Division that fees within the maximum are reasonable. I would hold that such maximum fee schedule constitutes a determination that any contingent fee exceeding the maximum in the schedule is unreasonable. Placing a lid on attorney fees does not constitute automatic approval of every contingent fee contract within the maximum. The Division rule itself makes this clear:

> "The Division retains its authority to regulate the attorney fee amount in any workers' compensation case even though the contract of employment fully complies with the rules set forth above." 24-3.18(42)-5-18220(7), A.R.M.

This leaves the Workers' Compensation Judge free to determine a reasonable attorney fee in an individual case by balancing the factors set forth in Clark v. Sage et al., supra.

_____
Chief Justice

-25-