No. 85-598

IN THE SUPREME COURT OF THE STATE OF MONTANA

1986

_____

MIKE MORRIS,

        Plaintiff and Appellant,

  -vs-

NATIONWIDE INSURANCE COMPANY,

        Defendant and Respondent.

_____

APPEAL FROM: District Court of the Ninth Judicial District,
             In and for the County of Teton,
             The Honorable R. D. McPhillips, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Erik B. Thueson, Great Falls, Montana

    For Respondent:

        Jardine , Stephenson, Blewett & Weaver; William
        Jacobsen, Great Falls, Montana

_____

Submitted on Briefs: March 13, 1986

Decided: July 31, 1986

Filed: JUL 3 1 1986

_____
                   Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

Appellant, Mike Morris, appeals from the judgment of the District Court, Ninth Judicial District, County of Teton, awarding him attorney fees in the amount of $4,664.88 against respondent, Nationwide Insurance Company.

Morris brought this case to recover damages sustained as a result of Nationwide's violations of the Unfair Claim Settlement Practices Act, § 33-18-201, et seq. MCA. The case is submitted to us by the parties with an agreed statement of facts pursuant to Rule 9(d), M.R.App.Civ.P.

The facts as agreed to by the parties are as follows: Morris brought an action to recover damages he alleged he sustained as a result of the negligence of Sun River Electric Co-op. He alleged that through the Co-op's negligence, a 7,200 volt line, owned and operated by the Co-op, started a fire on his ranch, causing the destruction of over 150 tons of hay, various fences, and trees, which were valuable windbreaks in his ranching operation.

The Co-op was insured for liability by Nationwide. Morris joined Nationwide to his action against the Co-op as a defendant, alleging that it had violated the Unfair Claim Settlement Practices Act, § 33-18-201, et seq. MCA, in the manner in which it conducted settlement negotiations concerning his claim against the Co-op.

The District Court bifurcated the liability claim and the bad faith claim. The trial concerning the Co-op's liability commenced on June 25, 1984 and resulted in a jury verdict in favor of Morris in the amount of $19,994.64. A

judgment was subsequently entered by the District Court for this amount, plus costs.

The trial of the third party bad faith action against Nationwide commenced on June 24, 1985. One of the issues submitted to the jury in the bad faith trial was whether Morris should be awarded the attorney fees he incurred in prosecuting his claims against the Co-op as an element of his compensatory damages. With regard to attorney fees, the District Court instructed the jury as follows:

> If you determine that the defendant has violated its duty under the previous instruction just read to you, then you should award damages to the plaintiff for all losses proximately caused thereby. The measure of damages is the amount which will compensate for all the detriment proximately caused by said conduct, whether it should have been anticipated or not. Provided that you determine that the loss has been suffered by the plaintiff, said damages shall include: . . .
>
> Attorney fees and costs incurred in prosecuting the lawsuit against Nationwide's insured, Sun River Electric Coop.

No objection was made by Nationwide as to the portion of the instruction dealing with damages for attorney fees.

The jury determined that Nationwide had acted in bad faith under the provisions of the Unfair Claim Settlement Practices Act and awarded $42,500 in compensatory damages to Morris. The jury did not award Morris any punitive damages. The jury, however, did find that Nationwide's bad faith had proximately caused Morris to incur attorney fees and costs in pursuing the underlying liability action against the Co-op. Question no. 1 of the jury verdict states:

> Should the plaintiff be awarded attorney fees and costs incurred in prosecuting his claim for damages resulting from the fire?
>
> Answer:
>
> Yes ___ X ___          No _____

If you have stated "yes" to the above question, then the Court shall assess appropriate attorney fees and costs in a separate hearing.

The hearing concerning attorney fees took place on July 31, 1985. At that time, the District Court took evidence in the form of testimony by Morris' attorney. On September 13, 1985, the District Court filed findings of fact and conclusions of law regarding the issue of attorney fees and costs to be awarded as compensatory damages. The District Court determined that Morris was entitled to $4,664.88 as compensatory damages for attorney fees incurred in the liability action. The District Court arrived at the above sum by reference to the contingent fee agreement entered by Morris and his attorney which provided that Morris' attorney, Erik B. Thueson, would receive 33 1/3 percent of all monies obtained for Morris by way of settlement and/or judgment as compensation for his services. An addendum was written on the agreement excepting the first $6,000.00 recovered from attorney fees.

At the hearing on attorney fees, Thueson presented evidence that 352 hours of attorney time were expended preparing and trying the underlying liability action against the Co-op. Thueson further testified that he considered $85.00 per hour to be a reasonable fee for this type of litigation. Thus, based on Thueson's testimony the District Court found reasonable attorney fees would have amounted to $29,992.25, if computed on an hourly basis.

Morris raises only one issue for our review: Whether the District Court erred in the manner in which it computed the amount of attorney fees awardable as compensatory damages.

- 4 -

Morris contends for a lodestar determination, that is, a fee based on reasonable hours expended times a reasonable hourly fee. It is well settled in Montana that where the subject of a contingent attorney fees contract does not offend public policy, it will be enforced according to its terms. Frank L. Pirtz Const., Inc. v. Hardin Town Pump (Mont. 1984), 692 P.2d 460, 464, 41 St.Rep. 2366, 2371; Wight v. Hughes Livestock Co., Inc. (Mont. 1983), 664 P.2d 303, 309, 40 St.Rep. 696, 702. Morris does not contend that the subject of his contingent attorney fees contract offends public policy. Rather, Morris contends that public policy of this State regarding the Unfair Claim Settlement Practices Act as announced by this Court in Klaudt v. Flink (Mont. 1983), 658 P.2d 1065, 1068, 40 St.Rep. 64, 68, would be defeated if the attorney fees recovery in this case is limited to the contingent fee contract. The argument put forth by Morris, however, confuses the role of compensatory and punitive damages.

It is true as Morris points out that in Klaudt we stated that one of the purposes of the Unfair Claim Settlement Practices Act was to prevent insurance companies from exerting "leverage against individual claimants because of the disparity in resource base." 658 P.2d at 1068, 40 St.Rep. at 68. Punitive damages are permitted in bad faith actions against insurance companies to deter such conduct. Morris, however, contends that the attorney fees should not be limited to the contingent fee agreement because to do so encourages insurance companies to engage in protracted litigation and to exert undue leverage against claimants.

In Fitzgerald v. Western Fire Ins. Co. (Mont. 1984), 679 P.2d 790, 792, 41 St.Rep. 654, 655-56, we distinguished between punitive and compensatory damages as follows:

> Compensatory damages result from <u>actual losses</u> resulting from bodily injuries or property damages. Punitive damages arise out of specific conduct deemed undesirable and thereby require punishment of the wrongdoer and make an example of him. (Emphasis added.)

The instructions given to the jury by the District Court properly described compensatory damages as "the amount which will compensate for all the detriment proximately caused . . . " The jury awarded Morris attorney fees as an element of compensatory damages and deferred to the District Court to determine the <u>actual</u> amount of attorney fees sustained by Morris. The amount of attorney fees sustained by Morris was set by the contingent fee agreement as 33 1/3 percent of all monies obtained for Morris by way of judgment over $6,000. To allow Morris to recover attorney fees based upon an hourly fee changes the issue in this case from what amount will compensate Morris for the actual damages he sustained in the form of attorney fees, to what amount would reasonably compensate Morris' attorney for his services. We are not concerned with the latter issue in this case.

Morris also cites the Court to Goggans v. Winkley (1972), 159 Mont. 85, 495 P.2d 594, in support of his contention that limiting attorney fees to the contingent fee agreement is violative of the collateral source rule. We find this argument unavailing. The collateral source rule prevents a defendant from putting evidence before a jury that some third party has made payments to the plaintiff which might reduce his damages. <u>Goggans</u>, 159 Mont. at 92, 495 P.2d at 598. In the instant case, there is no claim that the

contingency fee agreement reduces Morris' damages. Rather, the contingent fee agreement provides a basis to determine the damages Morris sustained by way of attorney fees.

Finally, Morris cites us to dicta in State v. Marsh (1978), 175 Mont. 460, 467, 575 P.2d 38, 43, wherein we stated that a contingent fee contract is not controlling in demonstrating the "reasonableness" of an attorney fee, as supportive of his argument. As stated previously, the issue in this case is not what amount constitutes a reasonable amount for the attorney's services, but what amount will compensate Morris for his actual losses sustained in employing his attorney. That amount was set by the contingent fee agreement.

We hold in this case that the provisions of the contingent fee agreement are controlling in computing the amount of attorney fees for which Morris would be liable to his attorney; that the contract fixes the damages Morris sustained thereof; and that the District Court did not err in the manner in which it computed attorney fees.

The parties agreed in the contingent fee agreement as follows:

> . . . Party of the First Part [Mike Morris] does hereby agree to reimburse Parties of the Second Part [attorneys] for any and all costs and expenses which they may incur in the representation of Party of the First Part and Thirty-three and One-third percent (33 1/3%) of all monies obtained for Party of the First Part by way of settlement and/or judgment as compensation for their services.

By a written addendum to the contingent fee contract, the attorneys agreed that the "first $6,000.00 received shall be free of attorney fees."

The agreed statement of facts under which the District Court acted recites that "[p]laintiff did not seek any award

of damages for attorney fees incurred in prosecuting the bad faith claim against Nationwide Insurance Company." The District Court was therefore confined by the agreed facts to the damages caused by attorney fees to the first part of the bifurcated action. The computation by the District Court of an attorney fee of $4,664.88 on a judgment of $19,994.64, after deducting $6,000.00 is correct.

Affirmed.

John C. Sheehy
                                              Justice

We Concur:

Chief Justice

Justices

- 8 -