ANNE L. LESOFSKI AND ANTHONY E. LESOFSKI, AND
MONICA D. LESOFSKI, BY THEIR GUARDIAN AD LITEM,
ANN L. LESOFSKI, PLAINTIFFS, v. RAVALLI COUNTY
ELECTRIC COOPERATIVE, INC., A MONTANA CORPORA-
TION, DEFENDANT AND THIRD-PARTY PLAINTIFF AND APPEL-
LANT, v. JOHN PAOLA, INC., A CORPORATION, THIRD-PARTY
DEFENDANT AND RESPONDENT.

No. 11311.
Submitted March 6, 1968. Decided April 1, 1968.
Rehearing Denied April 15, 1968.
439 P.2d 370.

Boone & Karlberg, Karl R. Karlberg (argued), Missoula, for appellant.

Garlington, Lohn & Robinson, H. L. Holt (argued), Missoula, for respondent.

MR. JUSTICE JOHN C. HARRISON, delivered the Opinion of the Court.

A summary judgment rendered in favor of a third party defendant was the prelude to this appeal.

On June 25, 1964, an employee of the respondent while in the course of his employment was electrocuted when a drill rig he was operating came in contact with the appellant's power line. The deceased employee, Jacob Lesofski, had been employed by the respondent as a powder man to drill and blast rock in the construction of the highway. During the construction, the appellant utility company was required to relocate its power lines due to the relocation of the highway. At the time of the accident, Lesofski moved his drill rig to a rock outcropping located beneath and to the north of appellant's power line. At that time the power line was not energized, but Lesofski was told by one of appellant's foremen that the line would soon be re-energized and that he, Lesofski, should stay away from the conductor. At that time Lesofski said he would do so, and he told appellant's foreman that

the next (and last) hole he had to drill was some distance from and beneath the power line. About an hour after this conversation the power line was re-energized for a short time and it then went off. It was then discovered by one of appellant's employees that the top six inches of the drill rig boom, extended vertically, was touching the power line. Lesofski's body was discovered near the compressor, which was operated by the drill rig, and the investigation showed his abdomen had come in contact with the air compressor during the time the line had been energized causing his electrocution. The respondent, John Paola, Inc., a corporation, carried workmen's compensation as provided by Title 92, R.C.M.1947, and fully discharged its obligations to the beneficiaries of the employee.

Thereafter, the widow of the deceased, in her own right and as guardian ad litem for her children, brought an action against the appellant claiming damages. Prior to the trial of the damage action, and nearly a year and one-half after the commencement of the law suit, the appellant filed a third-party complaint against the respondent seeking money damages for the cost of the defense and for any award or settlement incurred or made in the suit by the widow. This third-party complaint was based upon an indemnity agreement in a contract between respondent and the State Highway Commission for the road project on which deceased was working at the time of his death. Respondent refused to defend the case which was thereafter settled by the appellant who obtained a release from the widow and reserved its third-party claim against the respondent.

The only issue for this court's determination is whether the appellant has a claim under the 1962 Road and Bridge Specifications of the Montana Highway Department contract.

The respondent at the time of the accident, was under contract with the State Highway Commission to construct a portion of the Sleeping Child Hot Springs road south of Ham-

ilton, Montana. The contract provisions relating to the indemnity clauses are part of the standard specifications common to all highway construction projects which are set forth in a pamphlet of 460 pages divided into 97 different sections. The pertinent provisions of the specifications are found in Article 07.16(A) and provide:

"(A) General. When and where the contractor's operations are adjacent to or in the same area as the properties, underground service facilities and other service lines, and particularly gas lines and cables carrying high voltage electrical current, belonging to public utility companies or other persons, or are adjacent to other property which might be damaged resulting in considerable repair expense, work shall not be commenced until an arrangements necessary for the protection thereof have been made. * * * The contractor and his surety shall be solely and directly responsible to the owners and operators of such properties for any damage, injury, expense, loss, inconvenience or delay, or for any suits, actions, or claims of any character brought on account of any injuries or damages which may result from the carrying out of the work to be done under any contract and, if required by The Commission, he and his subcontractors shall furnish Protective Public Liability and Property Damage insurance to each corporation, company, partnership, or individual owning or operating any of the properties affected, in guarantee of this responsibility."

It is the position of the appellant utility company that this indemnity clause was for the benefit of the deceased workman.

■ ■ This court has long recognized the legality of indemnity clauses and that they should be liberally construed in favor of the party intended to be indemnified. Western Construction Equipment Co. v. Mosby's Inc., 146 Mont. 313, 406 P.2d 165; Union Electric Co. v. Lovell Livestock Co., 93 Mont. 577, 20 P.2d 255; Gary Hay & Grain Co. v. Carlson, 79 Mont. 111, 255 P. 722.

■ ■ It should be noted however that in this case the respondent had no contract of any sort with the appellant; nor had there been any bargaining by the appellant against its own negligence between the parties. To contend that we should liberally construe the contract of respondent with the State Highway Commission to include the appellant's negligent acts would in our opinion annul the recognized rule that to indemnify a party against his own negligence it must be expressed in "clear and unequivocal terms."

Further considering the language of section 07.16(A), here relied upon by the appellant, it should be noted that the very beginning sentences of the Specifications refers to the respondent's own negligence. Obviously, what is intended by the language of the Specifications is that the respondent is responsible for any damages to any property or persons that occur in the course of the construction. This clearly calls for insurance on the part of the respondent to cover personal injuries and death claims and property damage coverage, and cannot be liberally construed to cover appellant under the facts present in this case, absent "clear and unequivocal" language which would have given them that coverage.

MR. CHIEF JUSTICE JAMES T. HARRISON, and MR. JUSTICES HASWELL, ADAIR and CASTLES, concur.