No. 86-337

IN THE SUPREME COURT OF THE STATE OF MONTANA

1987

_____

ELMER SAMPSON,

        Claimant and Appellant,

    -vs-

BROADWAY YELLOW CAB COMPANY,
        Employer,
    and

STATE COMPENSATION INSURANCE FUND,

        Defendant and Respondent.

_____

APPEAL FROM:  The Workers' Compensation Court, The Honorable
              Timothy Reardon, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Kelly & Halverson, P.C.; Sheehy, Finn & Plath;
        Patrick Sheehy, Billings, Montana

    For Respondent:

        Crowley Law Firm; Terry G. Spear, Billings, Montana

_____

              Submitted:  March 4, 1987

                Decided:  April 2, 1987

Filed:  APR 2 - 1987

_____
              Clerk

Mr. Justice Fred J. Weber delivered the Opinion of the Court.

Claimant appeals an order of the Workers' Compensation Court which excluded his previously unreported tip income in determining his benefit rate and denied his request for a 20 percent penalty against respondents. We affirm in part and remand in part.

The issues are:

1. Should claimant's previously unreported tips be included in his wages for determining his proper compensation rate?

2. Did the Workers' Compensation Court err in denying claimant a 20 percent statutory penalty?

Claimant Elmer Sampson injured his back in September 1975, while working for Broadway Yellow Cab Company. After his injury, Mr. Sampson retained counsel and submitted a claim for benefits to the Division of Workers' Compensation. The claim included wage information for five pay periods.

The State Fund followed its normal procedure of using the four pay periods immediately prior to the injury in computing compensation rate. The resulting benefit rate was not challenged at that time by Mr. Sampson or his first attorney. The claim for compensation, the first attorney's letter to the Division, and the Employer's First Report all stated Mr. Sampson's wages without any reference to tips.

For several months, Mr. Sampson received temporary total disability benefits at the rate of $67.64 per week. Then he received 500 weeks of permanent partial disability benefits at the same rate, from February 1976 to September 1985. In September 1985, Mr. Sampson's permanent partial disability benefits were terminated because the 500-week limit on such benefits had been reached. Mr. Sampson then retained his present counsel.

A petition for a hearing on reinstatement of benefits was filed in December 1985. Mr. Sampson requested the Workers' Compensation Court to: (1) reinstate his terminated benefits; (2) increase his compensation rate to reflect his tip earnings and his wages from five, instead of four, pay periods; (3) grant a 20 percent penalty; and (4) award him attorney fees. At the pretrial conference, the respondent State Fund contended Mr. Sampson was not permanently totally disabled. In January 1986, however, it conceded permanent total disability and has continued to pay benefits since that time.

Trial on the remaining issues was held on February 5, 1986. At trial, Mr. Sampson testified that he received approximately $40.00 per week in tips. He testified he did not report this income to the Internal Revenue Service and that at the time he did not understand that his failure to report his tips was a violation of the law. He now understands this to be the case. Nevertheless, he admitted that he still has not filed amended tax returns reporting his tips.

The trial court awarded a compensation rate increase of 90 cents per week retroactive to claimant's injury date of September 2, 1975, based on five pay periods instead of four. It did not include Mr. Sampson's tip income for determining the rate, stating that it would not allow claimants to increase their claims by introducing previously unreported wages. It denied the 20 percent penalty and awarded attorney fees. Mr. Sampson appeals the exclusion of his tip income and the denial of the 20 percent penalty.

I

Should claimant's previously unreported tips be included in his wages for determining his proper compensation rate?

3

Ten years after his injury, Mr. Sampson claims for the first time that he received approximately $40 per week in tips, which should be included in his wage base. Mr. Sampson points out that tip income is usually included in computing workers' compensation benefits. See 2 Larson, Workmen's Compensation Law, § 60.12 (1986). In denying the request that this tip income be retroactively calculated into his wage base, the Workers' Compensation Court stated that:

> Claimant further argues that his tips should have been included in the wage rate calculations. The sole evidence presented with regard to tips in [sic] the testimony of the claimant which he reported to average $10.00 per day. ". . . [t]his Court will not establish a policy whereby claimants will be allowed to increase the defendant's evaluation of the settlement value by introducing previously unreported wages." [References made to workers' compensation cases.] Claimant is not persuasive in his arguments.

On appeal, the respondents argue that Mr. Sampson is equitably estopped from adding his claim for benefits for tip income at this late date. They point out that after the passage of more than 10 years it is impossible to determine whether the reported tips are accurate. While it is not mentioned in the lower court's findings, the undisputed testimony of Mr. Sampson's employer at Broadway Yellow Cab was that the cab company kept no records of employees' tips in 1975. But Mr. Sampson says that equitable estoppel cannot be considered because it was not raised in the pleadings.

This Court has refused to consider claims of equitable estoppel not raised in pleadings filed in district court. Sun Dial Land Co. v. Gold Creek Ranches (1982), 198 Mont. 247, 645 P.2d 936. However, in this workers' compensation case no responsive pleading was filed, or required, as would be true in district court. The first documents filed by

4

respondents were a pretrial statement and the pretrial order. Both documents set out the respondents' contentions that claimant's benefits were properly calculated and claimant was paid at the proper statutory rate. There is no suggestion as to legal theories. The theory of equitable estoppel was set out in respondents' proposed findings and conclusions. We conclude that the rule in Sun Dial does not control here, because of the procedural differences in the lower court.

While it appears that the basis for the court's decision was equitable estoppel, the theory is not clearly expressed in the findings or conclusions. In Sweet v. Colborn School Supply (1982), 196 Mont. 367, 372-73, 639 P.2d 521, 524, this Court described the six elements necessary to constitute an equitable estoppel:

> (1) there must be conduct, acts, language, or silence amounting to a representation or a concealment of material facts; (2) these facts must be known to the party estopped at the time of his conduct, or at least the circumstances must be such that knowledge of them is necessarily imputed to him; (3) the truth concerning these facts must be unknown to the other party claiming the benefit of the estoppel at the time it was acted upon by him; (4) the conduct must be done with the intention, or at least with the expectation, that it will be acted upon by the other party, or under the circumstances that it is both natural and probable that it will be so acted upon; (5) the conduct must be relied upon by the other party, and, thus relying, he must be led to act upon it, and (6) he must in fact act upon it in such a manner as to change his position for the worse. (Cases cited.)

Since these elements require factual determinations, we remand to the lower court for entry of additional findings and conclusions consistent with its judgment. Such findings and conclusions shall address the elements of equitable estoppel set out in Sweet. The passage of more than 10 years

combined with the inability of Mr. Sampson or his employer to submit proof on the alleged tips indicates that the doctrine of equitable estoppel applies.

II

Did the Workers' Compensation Court err in denying claimant a 20 percent statutory penalty?

The statute at issue is § 39-71-2907, MCA:

> When payment of compensation has been unreasonably delayed or refused by an insurer, either prior or subsequent to the issuance of an order by the workers' compensation judge granting a claimant compensation benefits, the full amount of the compensation benefits due a claimant, between the time compensation benefits were delayed or refused and the date of the order granting a claimant compensation benefits, may be increased by the workers' compensation judge by 20% . . .

Whether an action is "unreasonable" under this statute is a question of fact which is subject, on appeal, to the limited review of the substantial evidence test. Coles v. Seven Eleven Stores (Mont. 1985), 704 P.2d 1048, 1052, 42 St.Rep. 1238, 1242. Mr. Sampson contends that a penalty should be awarded because of the unreasonable failure to pay total disability benefits from the time he was first injured.

The only legitimate excuse for delay of proper payment is the existence of genuine doubt, from a medical or legal standpoint, that liability exists. Holton v. F. H. Stoltze Land & Lumber Co. (1981), 195 Mont. 263, 269, 637 P.2d 10, 14. Mr. Sampson did not request reconsideration of his designation as permanently partially disabled at any time from 1975 until September 1985. After his 500 weeks of permanent partial benefits were terminated, Mr. Sampson requested, among other things, a reconsideration of his benefit designation. Conflicting medical evidence existed as to what Mr. Sampson's physical and mental condition would

6

allow him to do. There was evidence that he was employed during parts of the period he received workers' compensation, and there was medical evidence that his problems were caused by his obesity, not by his industrial accident. The State Fund did eventually agree to award him permanent total disability benefits and reinstituted benefits under this designation.

Upon a thorough review of the record, we find substantial credible evidence to support the determination of the Workers' Compensation Court that the respondent did not unreasonably delay or refuse benefits. The decision of the lower court on this issue is therefore affirmed.

This case is remanded to the Workers' Compensation Court for reconsideration on the tip income issue as herein required.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

Mr. Justice John C. Sheehy did not participate.

7

IN THE SUPREME COURT OF THE STATE OF MONTANA

No. 86-337

ELMER SAMPSON,
      Claimant-Appellant,

    v.

BROADWAY YELLOW CAB COMPANY,
      Employer-Respondent,

   and

STATE COMPENSATION INSURANCE FUND,
      Defendant-Respondent.

)
)      O R D E R
)

The claimant and appellant has petitioned for rehearing in this matter. He argues that our opinion appears to allow an insurer to raise a new affirmative defense at any time, including after the close of the evidence. He argues that this position conflicts with the present practice of the Workers' Compensation Court. Upon consideration of this matter, we conclude that our opinion dated April 2, 1987, is not clear on this point. We therefore amend our opinion by deleting the following language beginning in the fourth line at the top of page 5:

> There is no suggestion as to legal theories. The theory of equitable estoppel was set out in respondents' proposed findings and conclusions. We conclude that the rule in Sun Dial does not control here, because of the procedural differences in the lower court.

We substitute the following language, at the same place:

> In contrast to pretrial orders used at district court, the precise legal theories of the parties are not set out. The transcript of trial demonstrates that in their opening statement,

FILED

APR 30 1987

Ethel M. Harrison
CLERK OF SUPREME COURT
STATE OF MONTANA

respondents made it clear that they would rely on Mr. Sampson's failure for over 500 weeks to complain about his rate of benefits or to claim his tip income. The theory of equitable estoppel was set out in respondents' proposed findings and conclusions. We conclude that the rule in Sun Dial is not appropriate in this situation because of the procedural differences from District Court and the presence of notice to claimant of the basis on which his claim would be resisted.

In all other respects, the petition for rehearing is denied.

DATED this 30th day of April, 1987.

_____
Chief Justice

_____

_____

_____

_____
Justices