No. 90-372

IN THE SUPREME COURT OF THE STATE OF MONTANA

1991

LINDA NEWMAN MILLER,

      Claimant and Respondent,

-v-

MAURINE FRASURE, d/b/a O'HAIRE MOTOR
INN RESTAURANT,

      Employer,

and

WESTERN GUARANTY FUND SERVICES,

      Defendant and Appellant.

**FILED**

APR 16 1991

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:    Workers' Compensation Court
                 The Honorable Timothy Reardon, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

            K. Dale Schwanke; Jardine, Stephenson, Blewett &
            Weaver; Great Falls, Montana

      For Respondent:

            Randall H. Gray; James, Gray & McCafferty; Great
            Falls, Montana

Submitted on Briefs:  February 21, 1991

Decided:  April 16, 1991

Filed:

_____
              Clerk

Justice R. C. McDonough delivered the Opinion of the Court.

This appeal from an order of the Workers' Compensation Court involves an increase in an injured worker's weekly compensation benefits. The defendant insurer, Western Guaranty Fund Services appeals the order of the court awarding claimant Linda Miller an increase in benefits from $80.00 per week to $138.30 per week. The award was based on Miller's claim that she had earned substantially more in tips and had failed to report such tips to her employer and the IRS. The court also awarded her certain attorney's fees and costs. The insurer appeals and the claimant has cross-appealed the attorney's fee award. We affirm.

The insurer raises two issues on appeal:

(1) Did the Workers' Compensation Court err in determining that claimant was entitled to an increased rate of compensation benefits due to tip income she allegedly had earned but failed to report?

(2) Did the Workers' Compensation Court err in awarding the claimant certain attorney's fees and costs?

The claimant raises the following issue on cross-appeal:

(3) Did the Workers' Compensation Court fail to award the claimant an adequate amount of attorney's fees?

The claimant suffered a compensable industrial injury while working as a waitress at her employer's coffee shop on or about July 10, 1984. On July 23, 1984 claimant filed a claim for benefits in which she set forth her gross earnings for the four month period immediately prior to her injury and added the phrase

2

"plus tips not inclu." The insurer initially denied her claim for benefits. The insurer took the position that it had accepted the claim in 1985. The court found that the insurer first accepted the claim in June, 1988 so that benefits paid until then had been paid under a reservation of rights. Although disputed by the parties, for purposes of the attorney fee issue they stipulated that the insurer had accepted liability at least by June of 1988.

In 1983 the claimant had reported $899 in tip income to her employer and in 1984 she reported $512 of tip income to her employer up to the time of her injury. She reported the same amount of tip income in the federal and state tax returns she filed for these years.

On October 4, 1988 the insurer calculated claimant's temporary total disability benefits at $80.00 per week, based upon the four pay periods prior to the date of the injury as reported in her claim for compensation. The claimant subsequently amended her 1984 tax return to show tip income of $2,486.00 and her 1983 tax return to show tip income of $4,425.00.

Based on these amended returns the Workers' Compensation Court found the claimant's actual income in 1984 was $87.44 per week more than the rate used by the defendant to compute her compensation rate. The court recalculated the claimant's compensation rate and concluded that it should be increased by $58.30 per week retroactive to the time of injury. The court also concluded that because a genuine dispute existed between the parties, the claimant was not entitled to a penalty of 20 percent

3

pursuant to § 39-71-2907, MCA, and that the claimant was entitled to recover her attorney's fees and costs.

On appeal the insurer argues that the record lacks substantial evidence to support the finding that the claimant under-reported her tip income and that the doctrines of estoppel and laches bar claimant from relying on previously unreported income to support her claim. The insurer also appeals the award of attorney fees to the claimant, and the claimant has cross-appealed on the ground the attorney's fee award is inadequate.

## I. Claimant's Tip Income

**Is there substantial evidence in the record to support the finding that the claimant under-reported her tip income?**

The claimant testified that she had kept track of her tips for IRS reporting purposes on IRS Form 4070 provided by her employer. She testified that her employer told her that she should report her tip income for each pay period by multiplying the number of hours worked in the pay period by $ .60. She further testified that it was her understanding that her employer did not want her to report more than $.60 per hour and she was concerned that if she did report more her job would be in jeopardy. She also testified that following each work shift and after she went home, she counted and recorded each day's actual tip income on her own personal calendar. This calendar was entered into evidence.

The insurer argues that the record of tips the claimant kept on her personal calendar is fabricated. As evidence of this fabrication the insurer first points out that claimant's employer

4

testified that she gave each employee a booklet that included a tip diary in which to record their tips, and this booklet contained removable IRS Forms 4070 to be used for tax reporting. Thus, the insurer argues there was no need for the claimant to record tips on her own personal calendar. Claimant, on the other hand, testified that the tip forms were available at work and the employees simply removed the Forms 4070 when necessary for tax reporting.

Second, the insurer points out that all the tip amounts recorded on claimant's personal calendar are all even dollar amounts for every single day recorded, and argues that this is highly unlikely. The claimant testified that patrons generally tip in even dollar and half dollar amounts, and thus it is a coincidence that the amounts in her 1984 tip record are all even dollars.

Third, the insurer alleges that the tips now claimed by the claimant are extremely high for a coffee shop waitress. The employer's accountant testified that generally 25% of patrons leave no tip at all. He testified that if this were the case with claimant's tables, they would have had to tip her an average of 42% of their purchases to equal the tips she now claims. Assuming that all her patrons tipped, they would have to tip approximately at a rate of 21% of all purchases.

Fourth, the insurer argues that claimant's testimony regarding her employer's "suggestion" that she claim her tips at a rate of $ .60 per hour is inconsistent with what she actually reported.

The insurer points out that claimant first testified that she was told she "had to" claim $.65 per hour, she later testified that she "could" report at $.65 per hour, and finally she "could" report at $.60 per hour. The insurer also argues that claimant never actually reported $.60 per hour in tips, rather she reported a range of $.40 to $.68 per hour. Claimant on the other hand argues that she was told that she should report tip income for each pay period by multiplying the number of hours worked in that period by $.60. She presented evidence that the tip income she reported to her employer on IRS Form 4070 in fact averaged $.60 per hour throughout 1983 and until her injury in 1984.

Finally, the insurer argues that there was no reason for the employer to tell her employees to report their tip income differently than what the IRS required. The claimant, on the other hand, testified that she was instructed to report her tips at a certain rate and that she believed it would jeopardize her job not to do so. Claimant's expert witness, a CPA, testified that the employer did have a motive for requesting employees to falsify their tip income. He testified that the greater the amount of tips reported by its employees, the greater the unemployment insurance premium would be for the employer. Claimant also presented the deposition testimony of Barbara Stoneberg, a coemployee. Stoneberg testified that she was told by her employer to report tip income at $.60 per hour.

The amended income tax returns filed by the claimant subjected her to approximately $1,700.00 of additional Federal Income and

6

Social Security tax, not including penalty and interest.

In its order the Workers' Compensation Court adopted the hearing examiner's conclusion that the claimant was credible. Our standard for reviewing a decision of the Workers' Compensation Court is to determine if there is substantial evidence to support the findings and conclusions of that court. Where there is substantial evidence to support the Workers' Compensation Court, this Court cannot overturn the decision. Coles v. Seven Eleven Stores (1985), 217 Mont. 343, 347, 704 P.2d 1048, 1050; Hume v. St. Regis Paper Company (1980), 187 Mont. 53, 59, 608 P.2d 1063, 1066.

Substantial evidence is that evidence that a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. Although it may be based on weak and conflicting evidence, in order to rise to the level of substantial evidence it must be greater than trifling of frivolous. Barrett v. Asarco (1990), 799 P.2d 1078, 1080, 47 St.Rep. 1980, 1982. Here, although the evidence is conflicting on the issue, it is sufficiently substantial to support the Court's findings and conclusions.

**Did the Workers' Compensation Court err in determining that the doctrines of estoppel and laches do not bar the claimant from relying on previously unreported income to support her claim?**

This Court set out the elements of equitable estoppel in Sampson v. Broadway Yellow Cab Co. (1987), 226 Mont. 273, 277, 735 P.2d 298, 300:

7

"(1) there must be conduct, acts, language, or silence amounting to a representation or a concealment of material facts; (2) these facts must be known to the party estopped at the time of his conduct, or at least the circumstances must be such that knowledge of them is necessarily imputed to him; (3) the truth concerning these facts must be unknown to the other party claiming the benefit of the estoppel at the time it was acted upon by him; (4) the conduct must be done with the intention, or at least the expectation, that it will be acted upon by the other party, or under the circumstances that it is both natural and probable that it will be so acted upon; (5) the conduct must be relied upon by the other party, and, thus relying, he must be led to act upon it, and (6) he must in fact act upon it in such a manner as to change his position for the worse."

Sampson, 735 P.2d at 300, quoting Sweet v. Colborn School Supply (1982), 196 Mont. 367, 372-373, 639 P.2d 521, 524. For an insurer to prevail on this defense each element must be met. Sweet, 639 P.2d at 524. In Sampson, we remanded the case to the Workers' Compensation Court to determine whether the claimant was equitably estopped from claiming that previously unreported tip income should be included in his wages in determining his compensation rate. Sampson, 735 P.2d at 300. Upon remand, the Workers' Compensation Court determined that the claimant was precluded by the doctrines of equitable estoppel and laches from relying upon previously unreported tip income to increase his benefit rate. Sampson v. Broadway Yellow Cab Co., WCC No. 8512-3369, decided June 9, 1988, Vol. IX, No. 588.

The case at bar is distinguishable from Sampson. There the claimant did not report his tips to the IRS at the time he was earning them nor did he mention the amount of his tips to his employer on his claim form when injured. The claimant waited 10 years before alleging that unreported tips should be used to

8

recalculate his benefit rate. Upon remand from this Court the Workers' Compensation Court found that the claimant had concealed a material fact by failing to report his tip income. The defendant insurer could also demonstrate the remaining elements of equitable estoppel. Here, the claimant sufficiently proved to the hearing's examiner that she was induced by her employer's instructions as to how she should report her tips, and that she believed she would face reprisal and possibly lose her job if she reported her tips other than pursuant to her employer's "suggestion." Furthermore, her claim specifically stated that tips were not included in the wages listed. This does not amount to a concealment of material facts such as the act of the claimant in Sampson. We hold that the Workers' Compensation Court did not err in determining that equitable estoppel does not apply.

Upon remand in Sampson for factual determinations regarding equitable estoppel, the Workers' Compensation Court also applied the doctrine of laches. Laches, a defense sounding in equity, precludes recovery to those who sleep on their rights:

> Laches . . . is a concept of equity; it means negligence in the assertion of a right; it is the practical application of the maxim, 'Equity aids only the vigilant;' and it exists when there has been unexplained delay of such duration of character as to render the enforcement of the asserted right inequitable.

In the Matter of the Estate of Wallace (1980), 186 Mont. 18, 26, 606 P.2d 136, 140. In Sampson, laches operated to preclude the claimant from asserting that unreported tip income should increase his compensation benefits where the claimant had waited ten years

to assert his claim.  See Sampson, WCC No. 8512-3369, decided June 9, 1988, Vol. IX, No. 588, p. 7.  Here, the delay was for approximately two years rather than ten.  Additionally, unlike Sampson, the claim filed here expressly stated that tips were not included in the wages listed.  Furthermore, in Sampson the insurer was prejudiced by destruction of the claimant's employment records during the ten year interim between his injury and his claim for a benefit increase.  Here, the claimant's employment records were always available to the insurer for the two year period before she petitioned for an increase.

The insurer argues that it changed its position and accepted liability based on claimant's original claim and now it is inequitable for her to raise her unreported tip income.  This argument is of no moment on these facts; it really pertains to the fifth and sixth elements of equitable estoppel concerning reliance. We hold that the Workers' Compensation Court correctly concluded that laches and equitable estoppel do not apply in this case.

## II. Attorneys' Fees

We will first discuss the merits of claimant's cross-appeal. Claimant alleges that the Workers' Compensation Court awarded her inadequate attorney fees.  Claimant's entitlement to attorney's fees and costs is governed by § 39-71-612, MCA, as it was in effect at the time of the claimant's injury on July 10, 1984.  The statute provides:

> **39-71-612.  Costs and attorneys' fees payable based on difference between amount paid by insurer and amount later found compensable.**  (1)  If an employer or insurer pays or tenders payment of compensation . . . but

10

controversy relates to the amount of compensation due and the settlement or award is greater than the amount paid or tendered by the employer or insurer, a reasonable attorney's fee as established by the division or the workers' compensation judge if the case has gone to a hearing, <u>based solely upon the difference between the amount settled for or awarded and the amount tendered or paid</u>, may be awarded in addition to the amount of compensation. (Emphasis added.)

. . . .

Section 39-71-612, MCA (1983). The parties stipulated that based on their usual hourly rates, the claimant's firm spent a total of $22,450.00 of time on all aspects of the claimant's case, including $12,378.00 of time on the issues that went to trial. Of the $22,450.00 in fees, $6,701.00 in fees were accumulated prior to the time of the submission and approval by the Division of the Attorney Retainer Agreement between claimant and counsel. The contingent fee agreement provided attorney's fees "[f]or cases that go to a hearing before the Workers' Compensation Judge or the Supreme Court, twenty five percent (25%) of the amount of the additional compensation payments the claimant receives. . . ." Based on § 39-71-612, MCA, and the fee agreement, the Workers' Compensation Court awarded the claimant's attorney fees of 25% of the increase in the amount of her temporary total disability rate, i.e. 25% of $58.30 per week due on all temporary total disability benefits from the date of her injury forward.

Relying on the criteria discussed in Wight v. Hughes Livestock Co., Inc. (1983), 204 Mont. 98, 664 P.2d 303, claimant's counsel requested that his fee be determined on an hourly basis rather than under the contingent fee contract. In <u>Wight</u>, this Court set forth the following considerations:

11

[I]n determining a reasonable attorneys fee . . . [the judge] must engage in a balancing process and consider on contingent basis the following factors:

(1)  The anticipated time and labor required to perform the legal services properly.
(2)  The novelty and difficulty of legal issues involved in the matter.
(3)  The fees customarily charged for similar legal services.
(4)  The possible total recovery if successful.
(5)  The time limitations imposed by the client or the circumstances of the case.
(6)  The nature and length of the attorney client relationship.
(7)  The experience, skill and reputation of the attorney.
(8)  The ability of the client to pay for the legal services rendered.
(9)  The risk of no recovery. (Citations omitted.)

Wight, 664 P.2d at 311-12.  When considering these factors, there is a presumption that the amount due the claimant's attorney under the contingent fee contract is a reasonable fee.  If the workers' compensation judge does not set a fee in accordance with the contingent fee contract, he is required to state with particularity in writing the reasons why the contingent fee contract is not followed.  Such reasons must be based upon strong countervailing evidence.  Wight, 664 P.2d at 312.

In it's order the Workers' Compensation Court stated:

The issue presented and prevailed upon by the claimant was a determination of the correct temporary total disability rate. . . .  There was no issue of liability. This issue and the proof relied on is fairly routine in this Court.  The only novel part of this case turns on claimant's decision, made in 1988, to amend her 1984 tax returns to conform to the actual tips received.
    We acknowledge counsel's time and effort on behalf of his client, but do not believe these facts and the evidence presented are sufficient to overcome the reasonableness of the contingent fee agreement.

12

Having properly considered the factors from <u>Wight</u>, the Workers' Compensation Court did not abuse its discretion in determining that the claimant's attorney should be awarded a fee based on the 25 percent contingent fee agreement.

Claimant also argues in her brief that she reserved the right to "amend" the contingent fee agreement to the form in use at the time of the claimant's injury if the court determined that attorney's fees should be based upon the contingent fee agreement. Such an agreement would provide for a contingent fee of 33 percent after hearing and 40 percent on appeal. Claimant cites no authority to support this position nor was this position raised and considered before the Workers' Compensation Court. Accordingly, we decline to consider this argument. See e.g. Martinez v. Montana Power Company (1989), 239 Mont. 281, 285, 779 P.2d 917, 920.

We now turn to the insurer's appeal regarding the propriety of the attorney's fees awarded to the claimant. The insurer alleges that claimant's counsel actually began representing the claimant prior to entering a contingent fee agreement. This is evidenced by some of the costs and fees itemized in claimant's attorney's affidavit showing services commenced in January of 1986. The claimant and her attorney entered into the agreement on June 8, 1987. The statute regulating attorney's fees in effect at the time of the claimant's injury provides:

> **39-71-613. Regulation of attorneys' fees -- forfeiture of fee for noncompliance.** (1) When an attorney represents or acts on behalf of a claimant or any other party on any workers' compensation claim, the

> attorney shall submit to the division a contract of employment stating specifically the terms of the fee arrangement between the attorney and the claimant.
>
> . . .
>
> (3)  If an attorney violates a provision of this section, a rule adopted under this section, or an order fixing attorney's fee under this section, he shall forfeit the right to any fee which he may have collected or been entitled to collect.

Section 39-71-613, MCA (1983).  The corresponding administrative rule, A.R.M. 24.29.3802, provides that "[a]n attorney representing a claimant on a workers' compensation claim shall submit to the division within thirty days of undertaking representation of the claimant . . . a contract of employment stating specifically the terms of the fee arrangement."  Thus, the insurer argues that pursuant to the above statute and regulation the claimant's attorney must forfeit any fee award because the attorney and claimant did not enter into a fee agreement until seventeen months after representation had begun.

The insurer relies on Hartford v. Young (1989), 239 Mont. 527, 782 P.2d 365, in arguing that a forfeiture is mandatory in this case.  However, Hartford is distinguishable from the case at bar. In Hartford, the claimant's attorney attempted to recover fees for advance payments received by virtue of the claimant's efforts.  In the lower court, the attorney argued that he was entitled to such fees because they were debts the insurer waived through his negotiating efforts.  He conceded this argument for the first time on appeal and admitted that he was not entitled to those fees, instead he argued that he was merely mistaken in his calculations. We noted that if his earlier argument was incorrect at the

14

appellate level, he should have known it was incorrect below. We held that his attempts to overcharge his client were in violation of the attorney fees regulation and workers' compensation statutes and upheld total forfeiture of fees under the mandate of §39-71-613, MCA.

Here, the claimant and her attorney entered into the agreement on June 8, 1987. The agreement was later filed with and approved by the Division as required by the regulations. The attorney began representing the client officially when the agreement was entered. While the claimant's attorney did attempt to recover fees incurred prior to entering the contingent fee contract on an hourly basis pursuant to Wight, the attorney was not attempting to charge the claimant for recovery received pursuant to the claimant's own efforts as in Hartford. Claimant's attorney here was attempting to build his case for additional fees on the ground that the fees were inadequate under Wight. Although we do not accept the merits of his argument, we do not conclude that it warrants a total forfeiture as in Hartford. Accordingly, the Workers' Compensation Courts' award of attorney fees was proper in this case. The order of the Workers' Compensation Court is

**AFFIRMED.**

R. C. McDonough
Justice

15

We Concur:

_____
Chief Justice

_____

_____

_____
Justices