No. 14782

IN THE SUPREME COURT OF THE STATE OF MONTANA

1979

---

IN RE THE MARRIAGE OF EARL E. ADAMS,

        Petitioner and Respondent,

   and

MILDRED A. ISSACSON ADAMS,

        Respondent and Appellant.

MILDRED A. ISSACSON ADAMS,

        Third Party Plaintiff and Appellant,

VIOLETTE AGNES SMITH,

        Plaintiff in Intervention,

   vs.

ALBERT A. ADAMS and HAZEL BAYERS,

        Third Party Defendants.

---

Appeal from:  District Court of the Fourteenth Judicial District,
Honorable Nat Allen, Judge presiding.

Counsel of Record:

   For Appellants:

      Lee Overfelt, Billings, Montana

   For Respondents:

      Berger, Anderson, Sinclair and Murphy, Billings, Montana
      James, Gray and McCafferty, Great Falls, Montana

---

        Submitted on briefs: November 7, 1979

        Decided:  DEC 31 1979

Filed: DEC 31 1979

Thomas J. Kearney
Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

This is an appeal from a judgment declaring a marriage invalid entered by the Hon. Nat Allen, District Court, Fourteenth Judicial District, Musselshell County.

On September 13, 1977, Earl E. Adams, now deceased, and Mildred A. Isaacson Adams were married. They were first cousins.

The parties had known each other for the greater portion of their lives and had always been on friendly terms. In later years, when Earl's health was failing, he and his first cousin, Mildred, were fairly constant companions. She looked out for his needs. At the time of their discussions about the possibility of marriage, he was 72 and Mildred was 67 years old. She was aware of the fact that their first cousin relationship might be a problem, but he assured her that the relationship would make no difference.

It was contended by Mildred that the marriage occurred because Earl would have had to enter a nursing home if he could not find someone to take care of him. As a part of the marriage discussion, Earl offered to take care of Mildred for the rest of her life, and to leave her everything he owned. As evidence of his good faith, he named her as a co-owner of twelve certificates of deposit, and they entered into mutual wills.

On November 9, 1977, Earl fell and broke both of his hips. He was hospitalized in Billings and later entered a nursing home there. On November 30, 1977, he commenced an action for a declaration of invalidity of his marriage to Mildred, and changed the ownerships on the various certificates of deposit so that he was the sole owner thereof.

While Earl's action against Mildred was pending, he died on January 2, 1978. His estate is presently being probated in Musselshell County. Whether Mildred is truly his

-2-

widow is a point for consideration in connection with the probate proceedings.

Following Earl's death, Albert J. Adams and Hazel J. Bayers, the co-personal representatives of his estate, were substituted as party petitioners in the invalidity action.

Trial was held on March 31, 1978. Although Mildred filed an answer and cross-complaint denying that she and the petitioner were first cousins and denying that the marriage was prohibited, at the trial she admitted that she and Earl were in fact first cousins.

On May 25, 1978, the District Court entered a judgment based on its finding that the marriage between the parties was invalid ab initio. Appeal was properly taken, and the matter is before this Court for submission on briefs without oral argument.

We find that this marriage between first cousins is void ab initio and affirm the District Court.

The matter is controlled by statute. Under section 40-1-401(1)(b), MCA (formerly section 48-310, R.C.M. 1947), a marriage between first cousins is specifically prohibited. In this respect, the present Montana statutory law differs from the Uniform Marriage and Divorce Act which does not include marriage between first cousins as a prohibited union. The public policy in Montana against marriages between first cousins is buttressed by the provisions of section 40-1-402, MCA, which states when the District Court shall enter its decree declaring the invalidity of a marriage prohibited by law. That section provides in subdivision (5), that "[u]nless the court finds, after a consideration of all relevant circumstances, including the effect of a retroactive decree on third parties, that the interests of justice would be served by making the decree not retroactive,

-3-

it shall declare the marriage invalid as of the date of the marriage.. . ."

The foregoing provision of section 40-1-402(5), MCA, in effect mandates a finding that the marriage is void ab initio. The exception noted in section 40-1-402, MCA, that the interests of justice would be served by making the decree not retroactive is lacking in this case, the District Court having made no such finding.

The action begun by Earl to invalidate the marriage did not abate by reason of his death. Section 27-1-501, MCA. It is lawful that the action be continued by his personal representatives. However, Mildred contends that under principles of estoppel the validity of her marriage to Earl should be sustained.

Before the adoption of section 40-1-402, MCA, relating to decrees declaring the invalidity of marriages, it was proper for courts to examine in annulment cases whether the marriage was void, or merely voidable. The distinction is summarized by the author in Annot., 47 A.L.R.2d 1393 (1956), entitled Marriage--Posthumous Attack, wherein it is stated:

> ". . . a voidable marriage is one affected by a defect which can be cured by ratification or confirmation, or by removal of a disability, while a void marriage is one which the parties have no power under any circumstances to ratify, confirm, or validate." 47 A.L.R.2d at 1403.

Accordingly, this Court held in In Re Shun T. Takahashi's Estate (1942), 113 Mont. 490, 129 P.2d 217, involving a marriage between a Japanese man and a Caucasian woman, that since the marriage offended Montana's then existing miscegenation statute, it was completely void, could not be cured by any later act of the parties and as such could be attacked by the parties themselves or collaterally (in that case by the public administrator). The force and effect of

-4-

the holding in _Takahashi_ appears to have been modified by the legislature by the adoption of section 40-1-402, MCA. That statute declares that any action for a declaration of invalidity of a prohibited marriage, including the marriage of first cousins, may be brought "at any time prior to the death of one of the parties". The parties that may bring the action are also limited. The provision of section 40-1-402(5), MCA, that the court may find after a consideration of all the relevant circumstances that the interests of justice require not making the decree retroactive, appears to grant power to the district judge to make this determination without regard to any distinction as to whether a marriage is void or merely voidable.

With respect to estoppel, the equitable principles which are applicable remain the same. To iterate, for equitable estoppel to exist, there must be: (1) a false representation or a concealment of facts, (2) made with the knowledge, actual or constructive, of the facts, (3) to a party without knowledge or means of knowledge of the facts, (4) with the intention that it should be acted upon and (5) reliance on the false representation to his or her prejudice by the other party. Cedar Creek Oil & Gas Co. v. Fidelity Gas Co. (9th Cir. 1957), 249 F.2d 277, cert.den. 356 U.S. 932, 78 S.Ct. 775, 2 L.Ed.2d 763; State ex rel. Howeth v. D. A. Davidson & Co. (1973), 163 Mont. 355, 517 P.2d 722. In this case, the evidence is that Mildred knew that a problem existed with respect to validity of marriages between first cousins, and certainly had equal means to discover the facts concerning the law. Moreover, in the case of a marriage of such short duration, it is difficult to perceive any real prejudice. There is no equitable basis therefore to forestall the application of the rule against the validity of this marriage as of its date.

The judgment of the District Court is affirmed.

-5-

_____
                Justice

We Concur:

_____
            Chief Justice

_____

_____
                Justices

      I concur in the result but not in all that is
stated.

                                              _____
                                                      JUSTICE