No. 91-069

IN THE SUPREME COURT OF THE STATE OF MONTANA

1991

CARLENE DAGEL,

        Plaintiff and Appellant,

v.

CITY OF GREAT FALLS,

        Defendant and Respondent.

APPEAL FROM:  District Court of the Eighth Judicial District,
In and for the County of Cascade,
The Honorable Thomas M. McKittrick, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

            Elizabeth A. Best, Best Law Offices; Great Falls,
Montana

        For Respondent:

            J. Dennis Moreen, Chronister, Driscoll & Moreen,
P.C.; Helena, Montana

FILED

Filed:  OCT 10 1991

CLERK OF SUPREME COURT
STATE OF MONTANA

/Clerk

Submitted on briefs: June 6, 1991

Decided: October 10, 1991

Justice Fred J. Weber delivered the Opinion of the Court.

Plaintiff, Carlene Dagel, brought this action alleging harassment by her supervisor which forced her to resign from her job. She sued the City of Great Falls under theories of violation of constitutional rights under 42 U.S.C. § 1983, wrongful discharge, and both negligent and intentional infliction of emotional distress. Plaintiff also filed a motion to join Charlis Manzer, her supervisor, as a party defendant; and also filed a motion for summary judgment on a number of grounds. The City also filed a motion for summary judgment. The District Court for the Eighth Judicial District, Cascade County, denied plaintiff's motions and granted summary judgment in favor of the City of Great Falls. Plaintiff appeals. We affirm in part and reverse in part.

The issues are:

1. Did the District Court properly conclude that the City of Great Falls is not liable under 42 U.S.C. § 1983?

2. Did the District Court properly hold that the City of Great Falls is immune from plaintiff's state law claims under § 2-9-111, MCA?

3. Did the District Court properly conclude that plaintiff was covered by a written collective bargaining agreement at the time of her discharge, thus preempting suit under the Wrongful Discharge From Employment Act?

4. Did the District Court properly conclude that plaintiff's claims of violation of the implied covenant of good faith and fair dealing and for infliction of emotional distress are barred by the

2

Wrongful Discharge From Employment Act?

5. Did the District Court properly deny plaintiff's motion to join Ms. Manzer under Rules 19 and 20, M.R.Civ.P.?

Plaintiff, Carlene Dagel, was hired on August 16, 1984, by the City of Great Falls Public Works Department (City) as a "Clerk II". Plaintiff's duties included taking phone messages, doing reports, billing, filing and some typing for various divisions within the Public Works Department. Her immediate supervisor was Charlis Manzer (Ms. Manzer). Ms. Manzer was an administrative assistant who also supervised one or two other clerks and a secretary.

Ms. Manzer disciplined plaintiff for poor performance of her duties with disciplinary actions ranging from oral counselling to suspension for a period of days. Plaintiff maintains that only one reprimand was contained in her personnel file when she was terminated but that Ms. Manzer kept other information concerning plaintiff in her own separate file. In November 1987, plaintiff resigned her employment following the last of these disciplinary actions because she felt her treatment by Ms. Manzer was causing her emotional problems. Plaintiff stated under oath:

> . . . it was three years, I have been so frustrated, and I have tried five times to commit suicide within the last few years. . . . And I decided, well, hey maybe that isn't the way that should be. If she's getting to me that much, maybe I should just get out of there. And so I drew up my letter of resignation after the last reprimand she gave me. I just felt that was so far out of line, and it just really, really upset me.

During most of her employment plaintiff was a member of a union, the Montana Public Employees' Association, a collective bargaining unit, which had contracted with the City. The union

3

contract with the City expired on June 30, 1986; plaintiff resigned in November 1987; and a new contract was executed December 1, 1987.

Both plaintiff and the union attempted to file a grievance under the procedure set forth in the union contract. The City refused that request, as set forth in the following letter submitted as an exhibit in the summary judgment proceeding:

City of GREAT FALLS Montana

P.O. Box 5021

December 17, 1987

Mr. Jim Adams
Montana Public Employees Association
P O Box 5600
Helena MT   59604

Re:   Carlene Dagel

Dear Mr. Adams:

I have your letter of December 11, 1987, where for the first time you attempt to assert the grievance procedure in this matter under a contract negotiated with the City.

In response, it is the City's position that the union lacks jurisdiction to initiate the grievance procedure for the following reasons:

1.   The dates of Dagel's suspension, November 3, 4, 5, 1987, occurred after the expiration of the former contract which terminated on June 30, 1986 and before the date of the current contract, December 1, 1987. In other words, there was no contract and no grievance procedure in effect or available to the union members during the dates of suspension.

2.   Dagel voluntarily terminated her employment with the City by letter dated November 4, 1987. By terminating her employment on November 4, 1987, Dagel severed her rights under any grievance procedure of a collective bargaining agreement or otherwise. No question was raised on the disciplinary procedure prior to Dagel's termination letter of November 4, 1987 and we submit neither she

4

> nor the union has jurisdiction to pursue such a claim now that she has voluntarily terminated her employment.

As explained in previous correspondence, we deem the City's disciplinary action to be proper under the circumstances and for the reasons stated above, consider the matter closed.

Sincerely,

s/ Hal Million

Hal Million
Acting Public Works Director

Subsequently, plaintiff filed this action in District Court to recover damages for wrongful discharge, violation of her constitutional rights, and intentional and negligent infliction of emotional distress. Plaintiff claimed that throughout her employment with the City, she was subjected to continual harassment by Ms. Manzer in the form of "purported counsellings and reprimands".

Plaintiff moved for summary judgment and to join Ms. Manzer, as a defendant. The City responded by filing a cross-motion for summary judgment. The District Court adopted the City's proposed findings of fact and conclusions of law and granted the City's motion for summary judgment. Plaintiff moved to amend judgment or grant a new trial, which motion was denied. This appeal followed.

I

Did the District Court properly conclude that the City of Great Falls is not liable under 42 U.S.C. § 1983?

Plaintiff sought recovery under 42 U.S.C. § 1983 which provides:

Every person who, under color of any statute, ordinance,

5

regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

The District Court concluded:

Carlene's allegations in her complaint are, in effect, that the defendant City of Great Falls is responsible for any alleged acts of Charlis Manzer because it is the employer. In other words, that the City is liable under Respondeat Superior. It is settled that a municipality cannot be liable for money damages in an action under 42 U.S.C. § 1983 based upon the theory of Respondeat Superior. Monell v. New York, 436 U.S. 658, 694 (1978); City of Oklahoma City v. Tuttle, 471 U.S. 808 (1985). Plaintiff's 1983 claims against the City are therefore without merit.

. . .

If a plaintiff can establish the existence of a widespread practice that, although not authorized by written law or express policy, is so permanent and well settled as to constitute a custom or usage with the force of law a municipality may be liable for the actions of its employees. Praprotnik, supra, 99 L. Ed. at 120. However, plaintiff has failed to allege either in her complaint or in her briefs any such widespread practice regarding harassment of employees.

Plaintiff has no valid cause of action under 42 U.S.C. § 1983 against the defendant City of Great Falls.

Plaintiff maintains that the City was responsible for the individual acts of its agent, Ms. Manzer, and adopted them as its own. She also maintains that under § 2-9-305, MCA, governmental employees have a responsibility beyond respondeat superior. She further argues Ms. Manzer was a policy maker for the City.

The City maintains that plaintiff's § 1983 claim must fail because the facts established by the plaintiff demonstrate that the City's liability under § 1983 is based upon respondeat superior, which is not a valid basis for recovery under § 1983. We agree.

6

The United States Supreme Court has held that respondeat superior or vicarious liability will not attach under § 1983. Monell v. New York City Dept. of Social Serv. (1978), 436 U.S. 658; City of Canton, Ohio v. Harris (1989), 489 U.S. 378. In Monell the Supreme Court held that § 1983 authorizes suit "for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels". Monell, 436 U.S. at 690-691.

In City of Saint Louis v. Praprotnik (1988), 485 U.S. 112, the Court further explained Monell, outlining four guiding principles for holding a municipality liable under § 1983:

(1) Municipalities may be held liable under § 1983 only for acts for which the municipality itself is actually responsible - those which the municipality has officially sanctioned or ordered;

(2) Only officials who have final policy making authority may by their actions subject the government to § 1983 liability;

(3) Whether a particular official has final policymaking authority is a question of state law; and

(4) The challenged action must have been taken pursuant to a policy adopted by the official or officials responsible under state law for making policy in that area of the city's business.

The City of Saint Louis Court went on to state:

> If the mere exercise of discretion by an employee could give rise to a constitutional violation, the result would be indistinguishable from respondeat superior liability. If, however, a city's lawful policy makers could insulate the government from liability simply by delegating their policymaking authority to others, § 1983 could not serve its intended purpose.
>                     . . .

7

[A] plaintiff may be able to prove the existence of a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law. . . .

[T]he authority to make municipal policy is necessarily the authority to make _final_ policy. When an official's discretionary decisions are constrained by policies not of that official's making, those policies, rather than the subordinate's departures from them, are the act of the municipality. Similarly, when a subordinate's decision is subject to review by the municipality's authorized policymakers, they have retained the authority to measure the official's conduct for conformance with _their_ policies. If the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final.

City of Saint Louis, 485 U.S. at 126, 127. (Citations omitted.)

However,

**[s]imply going along with discretionary decisions made by one's subordinates, . . . is not a delegation to them of the authority to make policy.** (Emphasis added).

Id. at 129.

Such is the case here. Plaintiff contends that Ms. Manzer harassed her and that Ms. Manzer discussed some of her disciplinary actions of plaintiff with her superiors. Plaintiff has failed to present facts establishing any delegation of policymaking authority to Ms. Manzer. At most the facts presented by the plaintiff establish that the City went along with the discretionary decisions made by Ms. Manzer. Further, plaintiff presented facts to establish that she was singled out by Ms. Manzer and harassed unfairly. Such facts contradict her contention that the behavior of Ms. Manzer was policy on the part of the City. We agree with the conclusion of the District Court that the factual basis for

8

plaintiff's complaint under § 1983 is founded on a theory of respondeat superior which is not a sufficient basis for recovery under § 1983.

We hold that the District Court was correct in concluding that the City is not liable under 42 U.S.C. § 1983.

II

Did the District Court properly hold that the City of Great Falls is immune from plaintiff's state law claims under § 2-9-111, MCA?

The District Court held that the City is immune from all state law claims under Peterson v. Great Falls School Dist. No. 1 (1989), 237 Mont. 376, 733 P.2d 316, and Eccleston v. Third Judicial Dist. Ct. (1990), 240 Mont. 44, 783 P.2d 363. Plaintiff maintains that the City is not immune under § 2-9-111, MCA, and even if it was that such immunity was waived under this Court's holding in Crowell v. School Dist. No. 7 of Gallatin County (Mont. 1991), 805 P.2d 522, 48 St.Rep. 81, by the City's purchase of liability insurance.

Section 2-9-111, MCA, was significantly amended by the 1991 Legislature. On May 24, 1991, Governor Stephens signed into law Senate Bill No. 154. The purpose of the act is stated as:

> AN ACT CLARIFYING THAT STATUTORY LEGISLATIVE IMMUNITY EXTENDS ONLY TO LEGISLATIVE BODIES OF GOVERNMENTAL ENTITIES AND ONLY TO LEGISLATIVE ACTIONS TAKEN BY THOSE BODIES; CLARIFYING THAT GOVERNMENTAL ENTITIES ARE NOT IMMUNE UNDER THE LEGISLATIVE IMMUNITY STATUTE FOR NONLEGISLATIVE ACTIONS; CLARIFYING THAT THE ACQUISITION OF INSURANCE DOES NOT WAIVE IMMUNITY; AMENDING SECTION 2-9-111, MCA; AND PROVIDING AN IMMEDIATE EFFECTIVE DATE AND A RETROACTIVE APPLICABILITY DATE.

Section 2-9-111, MCA (1991), now reads:

9

2-9-111. Immunity from suit for legislative acts and omissions. (1) As used in this section:

(a) the term "governmental entity" means only the state, counties, municipalities, school districts, and any other local government entity or local political subdivision vested with legislative power by statute;

(b) the term "legislative body" means only the legislature vested with legislative power by Article V of The Constitution of the State of Montana and that branch or portion of any other local governmental entity or local political subdivision empowered by law to consider and enact statutes, charters, ordinances, orders, rules, policies, resolutions, or resolves;

(c)(i) the term "legislative act" means:

(A) actions by a legislative body that result in creation of law or declaration of public policy;

(B) other actions of the legislature authorized by Article V of The Constitution of the State of Montana; or

(C) actions by a school board that result in adoption of school board policies pursuant to 20-3-323(1);

(ii) the term legislative act does not include administrative actions undertaken in the execution of a law or public policy.

(2) A governmental entity is immune from suit for a legislative act or omission by its legislative body, or any member or staff of the legislative body, engaged in legislative acts.

(3) Any member or staff of a legislative body is immune from suit for damages arising from the lawful discharge of an official duty associated with legislative acts of the legislative body.

(4) The acquisition of insurance coverage, including self-insurance or group self-insurance, by a governmental entity does not waive the immunity provided by this section.

(5) The immunity provided for in this section does not extend to any tort committed by the use of a motor vehicle, aircraft, or other means of transportation.

10

The act was given retroactive applicability within the meaning of § 1-2-109, MCA, to causes of action that have not been reduced to final judgment on or before the effective date of May 24, 1991. The amended statute controls in this case.

Section 2-9-111, MCA (1991), significantly changed the statute and therefore modified the theories expressed in the various immunity cases as well as in Crowell with regard to insurance. First, under the new statute, a legislative body is not immune from the negligent acts of its employees. § 2-9-111(1)(c), MCA (1991). Second, the purchase of insurance does not waive immunity. § 2-9-111(4), MCA (1991).

Thus, the pertinent question here is whether harassment by a supervisor is considered a "legislative act". Clearly it is not. Plaintiff's claim of constructive discharge is not related to action by a legislative body which resulted in the creation of law or declaration of public policy under § 2-9-111(1)(c)(i)(A), MCA (1991).

The District Court's decision predated the adoption of the amended statute. Because of the retroactive applicability of the immunity statute to the present case, we conclude the City is not immune from plaintiff's state law claims under § 2-9-111, MCA (1991). We reverse on this issue.

III

Did the District Court properly conclude that plaintiff was covered by a written collective bargaining agreement at the time of her discharge, thus preempting suit under the Wrongful Discharge

11

From Employment Act?

Plaintiff contends that because the City took the position in its letter of December 17, 1987, that there was "no contract and no grievance procedure in effect or available to the union members during the dates of suspension," the City should be precluded from arguing on appeal that the wrongful discharge claim of the plaintiff was barred and preempted because she was a union member covered by a collective bargaining agreement. The District Court did not rule upon plaintiff's contention. The District Court did adopt the theory of the City that the suit under the Wrongful Discharge from Employment Act was barred.

Clearly the City's position that there was no contract and no grievance procedure available to the plaintiff contradicts its later position that there was a collective bargaining agreement which bars her right to sue. Our question is whether such contradictory positions are barred under statute or case law.

We have reviewed the Montana case law with regard to equitable estoppel as well as the applicable statute on conclusive presumption. Unfortunately our cases have not been consistent in consideration of either the principles of equitable estoppel or conclusive statutory presumption.

In Howeth v. D.A. Davidson and Co. (1973), 163 Mont. 355, 517 P.2d 722, this Court stated the following with regard to the equitable principle of estoppel:

> The estoppel and waiver contention is grounded upon the equitable principle of estoppel. That doctrine is set out in section 93-1301-6(3), R.C.M.1947, which provides:

12

> "Whenever a party has, by his own declaration, act or omission, intentionally and deliberately led another to believe a particular thing true, and to act upon such belief, he cannot, in any litigation arising out of such declaration, act, or omission, be permitted to falsify it."

> This Court has further defined estoppel and its essential elements in Hustad v. Reed, 133 Mont. 211, 223, 321 P.2d 1083: . . .

The Court then described six essential elements which it concluded were necessary to constitute an equitable estoppel. We do not set forth the six essential elements in detail because the cases have not consistently followed them.

In In re Marriage of Adams v. Adams (1979), 185 Mont. 63, 604 P.2d 332, we set forth five principles which were stated to be required in order that equitable estoppel would exist. Again we will not set forth these elements in detail as the cases have not consistently applied them.

In Sweet v. Colborn School Supply (1982), 196 Mont. 367, 639 P.2d 521, this Court set forth six essential elements which it held to be necessary to constitute an equitable estoppel, without specific reference to the elements described in Howeth and Adams. Sweet describes the elements of equitable estoppel as follows:

> Six essential elements have been held necessary to constitute an equitable estoppel:

> "(1) there must be conduct, acts, language, or silence amounting to a representation or a concealment of material facts; (2) these facts must be known to the party estopped at the time of his conduct, or at least the circumstances must be such that knowledge of them is necessarily imputed to him; (3) the truth concerning these facts must be unknown

13

> to the other party claiming the benefit of the estoppel at the time it was acted upon by him; (4) the conduct must be done with the intention, or at least with the expectation, that it will be acted upon by the other party, or under the circumstances that it is both natural and probable that it will be so acted upon; (5) the conduct must be relied upon by the other party, and, thus relying, he must be led to act upon it, and (6) he must in fact act upon it in such a manner as to change his position for the worse." (Citations omitted.)

With the aim of eliminating confusion, we expressly reverse the holdings on the essential elements of equitable estoppel as contained in Howeth and Adams, and expressly reaffirm and readopt the six essential elements of equitable estoppel as above set forth in Sweet. Unfortunately Sweet failed to refer to the statutory provision described in the following paragraph which also should have been considered.

In 1983 the legislature adopted general revisions of the laws relating to evidence and as a part of those revisions, amended § 26-1-601, MCA (1989), to read in pertinent part as follows:

> **26-1-601. List of conclusive presumptions.** The following presumptions are conclusive:
> (1) the truth of a declaration, act, or omission of a party, as against that party in any litigation arising out of such declaration, act or omission, whenever he has, by such declaration, act, or omission, intentionally led another to believe a particular thing true and to act upon such belief; . . .

We are required to consider the foregoing statute on the issues before us.

In Kenneth D. Collins Agency v. Hagerott (1984), 211 Mont. 303, 310, 684 P.2d 487, 490, this Court set forth the following general principles regarding estoppel:

> Estoppel is a principle of equity . . . equity will grant relief sought when in view of all the circumstances to deny it would permit one of the parties to suffer a gross wrong at the hands of the other party who brought about the condition. . . . Estoppel is not favored and will only be sustained upon clear and convincing evidence . . .

We caution the user that the foregoing general statement of estoppel may be properly subject to the holdings of this case with regard to the elements of equitable estoppel as well as the above quoted statutory provision.

In Safeco Insurance Co. v. Ellinghouse (1986), 223 Mont. 239, 725 P.2d 217, this Court made specific reference to the above cited § 26-1-601, MCA, and pointed out that Safeco had failed to mention the controlling statute.

We come now to the present case. We conclude that § 26-1-601, MCA (1989), and the Sweet statement of the six essential elements of equitable estoppel are the controlling principles of law to be applied. We have previously quoted the position of the City in its December 17, 1987 letter. The deposition of the plaintiff establishes her position regarding the letter and her reliance upon that letter. In analyzing the provisions of § 26-1-601(1), MCA (1989), we conclude that the City's letter of December 17, 1987, constituted a declaration or act, which intentionally led the plaintiff to believe that the facts set forth in the letter were true and caused her to act upon that belief. As a result, under the statute, the truth of the dated letter has been established conclusively as against the City. The requirements of § 26-1-601(1), MCA (1989), have been met.

15

We next analyze the facts of this case to determine if the six essential elements of equitable estoppel as set forth in Sweet have been met. We conclude as follows: (1) there was conduct by the City which amounted to a representation of a material fact; (2) the facts set forth in the December 17 letter were known to the City as the writer of the letter; (3) the truth concerning the December 17 letter was unknown to the plaintiff at the time; (4) the City acted with the intention that the plaintiff in turn would also act; (5) the plaintiff relied upon the letter of December 17 and was led to do so by the wording of the letter; and (6) she in fact acted in such a manner as to change her position for the worse. We conclude that the facts in this case clearly meet the required six elements of equitable estoppel contained in Sweet.

We reverse the District Court on this issue. We hold that the City may not contend the plaintiff was covered by a written collective bargaining agreement at the time of her discharge. As a result we hold that the plaintiff may proceed with her suit under the Wrongful Discharge from Employment Act.

IV

Did the District Court properly conclude that plaintiff's claims of violation of the implied covenant of good faith and fair dealing and for infliction of emotional distress are barred by the Wrongful Discharge From Employment Act?

The District Court held that plaintiff's claims for violation of the covenant of good faith and fair dealing and for infliction of emotional distress are not allowed by the Wrongful Discharge

16

From Employment Act. It also held that even if her claims could otherwise have survived summary judgment, the City was immune from such claims under § 2-9-111, MCA (1989). The District Court dismissed those claims.

Under Issue II of this opinion, we concluded that the City was not immune from the plaintiff's claims under amended § 2-9-111, MCA (1991). As a result, the immunity theory is not controlling on this issue.

The District Court was correct in holding that no claim for discharge may arise from tort or express or implied contract under the provisions of the Wrongful Discharge From Employment Act. § 39-2-913, MCA, Section 39-2-904, MCA, provides that a discharge is wrongful only if:

> (1) it was in retaliation for the employee's refusal to violate public policy or for reporting a violation of public policy;
>
> (2) the discharge was not for good cause and the employee had completed the employer's probationary period of employment; or
>
> (3) the employer violated the express provisions of its own written personnel policy.

The City maintains that plaintiff failed to properly state a cause of action under the Wrongful Discharge From Employment Act. Plaintiff's complaint contained the following pertinent allegations:

> 6. That Plaintiff's immediate supervisor, Charlis Manzer, continually and repeatedly harassed Plaintiff and treated her in a different fashion than she treated other employees in like circumstances, and created such an environment that the Plaintiff found it so intolerable that voluntary termination was her only reasonable alternative.

17

7.   That the City discharged Plaintiff **without warning, without written notice or valid reason, and contrary to the City's own articulated policies and procedures.**

8.   By reason of Plaintiff's satisfactory service and the performance of her duties, her employer's assurances, policies, and procedures, salary increases, and the absence of criticism of her performance, there was an implied promise by the City that Plaintiff's employment would not be terminated and **she would not be discharged except for just cause.**   In terminating Plaintiff's employment as alleged, the City wrongfully, unreasonably, and tortiously violated its implied promise and its duty implied in the employment relationship to deal fairly and in good faith with Plaintiff.   (Emphasis added).

As plaintiff argues, the Complaint clearly states a cause of action for claims under the Wrongful Discharge From Employment Act. She also sets forth a claim for breach of the implied covenant of good faith and fair dealing and for infliction of emotional distress.

Section 39-2-905(3), MCA, provides that under the Act there is no right to damages for wrongful discharge for pain and suffering, emotional distress, or punitive damages.   Thus, plaintiff cannot bring claims for breach of the implied covenant of good faith and fair dealing and emotional distress under the Act.   However, plaintiff claims that many of the acts occurred prior to July 1987, the effective date of the Wrongful Discharge From Employment Act.   It may be that plaintiff will desire to amend her complaint in order to more clearly allege acts which occurred prior to the effective date of the Act, which would allow a pre-Act claim for those damages otherwise excluded by the Act.

We hold that the District Court incorrectly concluded that plaintiff's claims of violation of the implied covenant of good

18

faith and fair dealing and for infliction of emotional distress which occurred prior to the effective date of the Wrongful Discharge From Employment Act were barred by the Act. We reverse on this issue and remand to the District Court, pointing out that the District Court may properly allow the plaintiff to amend her complaint to conform to the facts as she contends them to be, pursuant to Rule 15(b), M.R.Civ.P.

V

Did the District Court properly deny plaintiff's motion to join Ms. Manzer under Rules 19 and 20, M.R.Civ.P.?

Plaintiff sought to join as a defendant her supervisor, Ms. Manzer, pursuant to Rules 19 and 20, M.R.Civ.P. The District Court denied plaintiff's motion, holding:

> 7. Plaintiff attempts to avoid summary judgment against her by moving pursuant to Rule 19 of the Montana Rules of Civil Procedure to join [Ms.] Manzer as a party defendant. She has filed no proposed amended complaint naming Manzer as defendant and her argument to do so does not change the basis of her claims. In fact it appears plaintiff continues to affirmatively argue that Manzer was acting within the course and scope of her employment. Plaintiff argues that since the Montana Tort Claims Act indemnified a sued employee who acts within the course and scope of employment, Manzer can be joined without prejudice to her and that this will save plaintiff's claims.

Rule 20(a), M.R.Civ.P., provides:

> All persons may join in one action as plaintiffs if they assert any right to relief jointly, severally, or in the alternative in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all these persons will arise in the action. All persons may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence or series of transactions or occurrences and if nay question of law or fact common to all defendants will arise in the action. . . .

19

As plaintiff points out, she has filed a separate complaint against Ms. Manzer in her official and personal capacities. Clearly, both actions arise out of the same "transaction, occurrence, or series of transactions or occurrences". In the interest of judicial economy, plaintiff should be allowed to join Ms. Manzer as a party defendant, individually and officially.

We hold that the District Court improperly denied plaintiff's motion to join Ms. Manzer under Rules 19 and 20, M.R.Civ.P.

We affirm the holding of the District Court that the City is not liable under 42 U.S.C. § 1983. We reverse as to the remaining issues and remand for further proceedings consistent with this opinion.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

20

Justice Terry N. Trieweiler specially concurring.

I concur with the result of the majority opinion. However, I cannot agree with all that is said therein.

Specifically, I do not feel it is necessary to reconcile the past 18 years of inconsistent decisions on the subject of equitable estoppel, and in the process reverse two prior decisions, when that issue was never briefed, argued, nor raised by the parties.

The majority's dissertation on the history of equitable estoppel is especially unnecessary to this opinion in light of § 26-1-601, MCA, which seems to clearly resolve the third issue on appeal.

Defendant argues, and the District Court concluded, that plaintiff's wrongful discharge suit was preempted by a collective bargaining agreement which defendant now contends was in effect at the time plaintiff terminated her employment. However, as pointed out by the majority, when plaintiff sought to avail herself of the grievance procedure provided for under the collective bargaining agreement, defendant denied that such an agreement existed and refused her the opportunity to do so. Hal Million, the acting public works director for the City of Great Falls, plainly stated that:

> [T]here was no contract and no grievance procedure in effect or available to the union members during the dates of suspension.

Because of defendant's representation as set forth above, plaintiff was denied the opportunity to pursue the grievance

21

process and as a result filed this litigation. Therefore, the truth of Mr. Million's earlier statement is conclusively presumed pursuant to § 26-1-601, MCA, and there was no grievance procedure available to claimant which could preempt her claim under the Wrongful Discharge From Employment Act.

I agree with the result arrived at by the majority. However, I would wait for another day, after the issue had been raised and briefed, before trying to reconcile and rewrite Montana's decisions on the law of equitable estoppel.

_____
Justice

22

October 10, 1991

## CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:

Elizabeth A. Best
Best Law Offices
P.O. Box 2114
Great Falls, MT 59403

J. Dennis Moreen
Chronister, Driscoll & Moreen
208 No. Montana Ave.
Helena, MT 59601

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
    Deputy