No. 92-454

IN THE SUPREME COURT OF THE STATE OF MONTANA

1993

A. EVANS KEPHART, a/k/a
ALVIN EVANS KEPHART,

THE ESTATE OF JOHN W. KEPHART, JR.,
Deceased,

Plaintiff and Appellant,

-vs-

MARTIN E. PORTMANN and HELEN
OCILE PORTMANN, husband and wife,

Defendants, Respondents and
Cross-Appellants.

FILED

JUN 29 1993

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:  District Court of the Eighteenth Judicial District,
In and for the County of Gallatin,
The Honorable Larry W. Moran, Judge presiding.


COUNSEL OF RECORD:

For Appellant:

Calvin L. Braaksma; Landoe, Brown, Planalp &
Braaksma, Bozeman, Montana

For Respondents:

Thomas M. White; Morrow, Sedivy & Bennett,
Bozeman, Montana


Submitted on Briefs:  February 4, 1993

Decided:  June 29, 1993

Filed:

_____
Clerk

Justice Karla M. Gray delivered the Opinion of the Court.

A. Evans Kephart and the Estate of John W. Kephart, Jr., (Kepharts) appeal from a judgment of the Eighteenth Judicial District Court, Gallatin County, determining that Martin and Helen Portmann (Portmanns) possess a ditch easement over and across the Kepharts' property. The Portmanns cross-appeal the order of the District Court denying them costs and attorney's fees associated with their defense of this action. We affirm in part and reverse in part.

We address the following issues:

1. Did the District Court err in concluding that the Portmanns have a ditch easement over and across the Kepharts' property?

2. Did the District Court err in concluding that the Portmanns have a secondary easement to enter, inspect, repair and maintain the "Murray Ditch"?

3. Did the District Court err in failing to award costs and attorney's fees to the Portmanns for the defense of this action?

The parties own contiguous parcels of land in Gallatin County, Montana. Both parties use their respective lands for agricultural purposes and require water for irrigation and stock. The parties' water rights previously were determined and are not at issue in this case.

Denny Creek is a stream in Gallatin County which flows in a northeasterly direction. As far back as the early 1900s, various property owners in the vicinity tapped Denny Creek in order to utilize its waters on their respective lands. In some instances, property owners whose land did not border Denny Creek constructed

2

ditches, or used the ditches of others, to transport water across the riparian lands of another.

Such was the case in 1926 when L.A. Murray, the Portmanns' predecessor in interest, began to run Denny Creek water to his property through an old irrigation ditch over the lands of the Kepharts' predecessor in interest, Conrad M. Wenderoth. L.A. Murray also enlarged and improved the ditch, resulting in an increased capacity to carry water. This ditch became known as the "Murray Ditch" in a 1937 adjudication of water rights of certain parties utilizing Denny Creek (1937 Decree), including L.A. Murray.

In addition to granting water rights to L.A. Murray and others, the 1937 Decree divested Conrad M. Wenderoth of any right to appropriate the waters of Denny Creek. Also in 1937, the Wenderoth property was conveyed to the Kepharts. In 1965, the District Court issued a Judgment and Decree in Cause No. 10558, adjudicating Wenderoth's defaulted water rights in favor of the Kepharts with a 1938 priority date.

The Kepharts' water rights were for irrigation of the Wenderoth property acquired by them in 1937. The water was to be diverted from Denny Creek through the "Murray Ditch." Although the court in Cause No. 10558 referred to the ditch as the "Portmann-Kephart Ditch," it is clear from the court's description that this ditch was in fact the "Murray Ditch." For a number of years, both parties utilized the "Murray Ditch" to transport water from Denny Creek to their respective lands, seemingly without substantial conflict.

3

In 1988, Martin Portmann entered onto the Kepharts' property with a backhoe to clean and maintain the ditch. He again entered onto the Kepharts' property in 1990 and removed metal culverts, replacing them with wooden diversions and measuring devices. He also placed a rail fence around the wooden diversions and measuring devices to prevent the Kepharts' cattle from damaging these improvements.

Following Portmann's actions, the Kepharts filed suit complaining that the Portmanns improperly dug and enlarged the "Murray Ditch." The Kepharts sought a judgment requiring the Portmanns to install check devices in the ditch and proper measuring devices at the point of their diversion from Denny Creek. They also sought to enjoin the Portmanns from interfering with the "Murray Ditch" and its diversion structures, and sought damages, costs, and attorney's fees.

After a bench trial, the District Court concluded that the 1937 Decree created an easement for the benefit of the Portmanns to transport water to their property through the "Murray Ditch." The court also concluded that the Portmanns had a secondary easement to reasonably enter, inspect, repair, and maintain the "Murray Ditch" and its diversions and measuring devices. Each party was to pay its own costs, fees and expenses.

I

Did the District Court err in concluding that the Portmanns have a ditch easement over and across the Kepharts' property?

The Kepharts assert that the District Court erred in concluding that the 1937 Decree created a ditch right in favor of

4

L.A. Murray, the Portmanns' predecessor in interest. They argue that the 1937 Decree merely adjudicated water rights and did not create ditch rights in L.A. Murray.

We affirm the result reached by the District Court in this case. Where the result reached by a district court is correct, it will be upheld on appeal regardless of the reasons given for it. Rath v. St. Labre Indian School (1991), 249 Mont. 433, 439, 816 P.2d 1061, 1064. Therefore, based upon a 1960 Irrigation Ditch Agreement (Agreement) between the parties, rather than the 1937 Decree, we affirm the District Court's determination that the Portmanns have a ditch right in the "Murray Ditch."

In the Agreement, the Kepharts specifically acknowledged the existence of the Portmanns' ditch right to conduct Denny Creek water to the Portmann property. Given the known use of the "Murray Ditch" before and after the entry of the 1937 Decree, the acts of the Portmanns since 1954 in consistently using, cleaning, and maintaining the "Murray Ditch," and the terms of the 1960 Agreement itself, the only reasonable interpretation of the Agreement is that the Kepharts affirmatively recognized that the Portmanns had a superior ditch right in the "Murray Ditch."

We do not agree with the Kepharts' contention that the Agreement is void for lack of consideration on the part of the Portmanns. The parties made mutual agreements. The Kepharts obtained the Portmanns' agreement to their use of the ditch and the Portmanns obtained the Kepharts' agreement not to interfere with their water rights or superior ditch rights. In addition, the

5

parties promised to share equally the costs of ditch maintenance and the construction and maintenance costs of a headgate at Denny Creek. "Mutual promises alone are enough to support valid consideration." Rudio v. Yellowstone Merchandising Corp. (1982), 200 Mont. 537, 544, 652 P.2d 1163, 1167 (citations omitted). Similarly, we do not agree with the Kepharts' contention that the Agreement was merely a revocable license granted by them to the Portmanns. It was the Kepharts who sought the Agreement and gained the primary benefit from it.

As a result of Kepharts' clear acknowledgement of the Portmanns' superior ditch right in the Agreement, they are estopped from now challenging the existence of the Portmanns' ditch right. We recently clarified the elements of equitable estoppel in Dagel v. City of Great Falls (1991), 250 Mont. 224, 819 P.2d 186. In Dagel, we readopted the six essential elements necessary to constitute an equitable estoppel:

> (1) there must be conduct, acts, language, or silence amounting to a representation or a concealment of material facts; (2) these facts must be known to the party estopped at the time of his conduct, or at least the circumstances must be such that knowledge of them is necessarily imputed to him; (3) the truth concerning these facts must be unknown to the other party claiming the benefit of the estoppel at the time it was acted upon by him; (4) the conduct must be done with the intention, or at least with the expectation, that it will be acted upon by the other party, or under the circumstances that it is both natural and probable that it will be so acted upon; (5) the conduct must be relied upon by the other party, and, thus relying, he must be led to act upon it, and (6) he must in fact act upon it in such a manner as to change his position for the worse.

Dagel, 819 P.2d at 192-93.

In this case, the required elements have been met. First, the

6

Kepharts represented to the Portmanns that the Portmanns had a superior right in the "Murray Ditch." Second, by virtue of the language of the Agreement, it is evident that the Kepharts knew of the existence of the Portmanns' superior ditch right. Third, the truth concerning the recognition of the ditch right, namely that almost thirty years later, the Kepharts would deny the existence of the Portmanns' ditch right, was unknown to the Portmanns at the time they entered into the Agreement.

Fourth, the Kepharts' conduct in acknowledging the Portmanns' ditch right clearly was intended to be acted upon by the Portmanns in allowing the Kepharts to use the ditch and continuing to utilize the ditch themselves without interference. Fifth, the Portmanns relied, and were led to act, upon the Kepharts' conduct. Finally, the Portmanns did act upon the Kepharts' conduct in maintaining the ditch by expending money and labor, and by allowing the Kepharts to transport water through the ditch. These actions served to change the Portmanns' position for the worse.

We conclude that the Kepharts are estopped from denying the existence of the Portmanns' ditch right and, on that basis, we need not determine the origin of the easement. The District Court did not err in concluding that the Portmanns have a ditch right in the "Murray Ditch."

II

Did the District Court err in concluding that the Portmanns have a secondary easement to enter, inspect, repair and maintain the "Murray Ditch"?

Based upon its conclusion that the Portmanns are owners of an

7

easement in the "Murray Ditch," the District Court also concluded that they have a necessary secondary easement to reasonably enter, inspect, repair and maintain the ditch. In reviewing a District Court's conclusion of law, we determine whether the interpretation of law is correct. Steer, Inc. v. Department of Revenue (1990), 245 Mont. 470, 474-75, 803 P.2d 601, 603.

Pursuant to § 70-17-112(1), MCA, "[a] person with a canal or ditch easement has a secondary easement to enter, inspect, repair, and maintain a canal or ditch." Because the Portmanns have a ditch right in the "Murray Ditch," we hold that the District Court did not err in concluding the Portmanns have a secondary easement.

III

Did the District Court err in failing to award costs and attorney's fees to the Portmanns for the defense of this action?

In their cross-appeal, the Portmanns argue that, because the District Court determined they had an easement, they were the prevailing party and entitled to costs and reasonable attorney's fees under § 70-17-112(5), MCA. They rely on Sharon v. Hayden (1990), 246 Mont. 186, 803 P.2d 1083.

The pertinent subsections of § 70-17-112, MCA, provide:

    (1) A person with a canal or ditch easement has a secondary easement to enter, inspect, repair, and maintain a canal or ditch.

    (2) No person may encroach upon or otherwise impair any easement for a canal or ditch used for irrigation or any other lawful domestic or commercial purpose, including carrying return water.

    . . .

    (5) If a legal action is brought to enforce the provisions of this section, the prevailing party is

8

entitled to costs and reasonable attorney's fees. Section 70-17-112, MCA.

In Sharon, the defendants prevailed under both subsections (1) and (2) of § 70-17-112, MCA. They obtained adjudication of their secondary easement and a determination that the plaintiff had impaired and encroached on their ditch easement. As a result, we held that they were the prevailing party and entitled to costs and attorney's fees under § 70-17-112, MCA.

In the case before us, the Portmanns had a ditch right which was specifically acknowledged and recognized by the Kepharts in 1960. When they exercised their secondary easement rights to enter, repair and maintain the ditch pursuant to § 70-17-112(1), MCA, they ultimately were forced into court by the Kepharts to defend the existence of the ditch right and corresponding secondary easement. On these facts, we conclude that the Kepharts' lawsuit constituted an impairment of the Portmanns' easement under § 70-17-112(2), MCA. Because the Portmanns are the prevailing party here, we hold that the District Court erred in failing to award them costs and attorney's fees for the defense of this action.

Affirmed in part, reversed in part and remanded for determination of costs and attorney's fees under § 70-17-112(5), MCA.

_____
Justice

We concur:

_____

9

William E Hunt Sr

R. C. McDonough

Justices

June 29, 1993

## CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:

Calvin L. Braaksma
Landoe, Brown, Planalp & Braaksma
P. O. Box One
Bozeman, MT  59771-0001

Lyman H. Bennett, III and Thomas M. White
Morrow, Sedivy & Bennett
P. O. Box 1168
Bozeman, MT  59711-1168

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
    Deputy